OPINION
On September 4, 1998, defendant, Edward G. Bynum, was indicted for attempted murder and felonious assault. The charges set forth in the indictment were the result of a beating which left the victim, Tina Franklin, with a severe open skull fracture which necessitated the debridement and removal of the left side of her brain. As a result of her injuries, Franklin has been left in a permanent vegetative state, unable to speak, move, or take care of herself in any way. Defendant was tried on January 19, 1999, and convicted of both charges set forth in the indictment. Defendant now appeals raising the following two assignments of error:
 [I.] The verdict was not based on sufficient evidence and the convictions are against the manifest weight of the evidence.
 [II.] Prejudicial error is committed when the trial court refuses to give a jury instruction for an inferior degree offense when the evidence supports its giving, thereby depriving the accused of his right to a fair trial under the state and federal constitutions.
In 1989, defendant began a relationship with Sheree Pierce. Although the two were never married, for almost nine years they lived together as husband and wife. In August 1998, defendant began to suspect that Pierce was having an affair. Indeed, as defendant suspected, Pierce was involved in an intimate relationship with Franklin. Defendant, an avid motorcyclist, returned home from the National Motorcycle Association Convention in Louisville, Kentucky, on Saturday night, August 8, 1998, and found that their minor children had been left alone for several hours. According to defendant, this was not typical behavior for Pierce. Pierce eventually returned to the home after midnight that evening. Defendant testified that this also was not typical behavior for Pierce.
The next day, Pierce stated that she was leaving to attend a friend's baby shower. She called at about 9 p.m. that evening to let defendant know that she was on her way home; however, she did not return. The next day, Monday evening, Pierce called defendant and again stated that she was on her way home. Defendant testified that he checked the caller identification system on their phone system and discovered that Pierce had called from a pay phone. Defendant then called the number of the pay phone, and on the third call someone answered who told him the location of the phone. Defendant then put the children to bed and left on his motorcycle to search the area where the pay phone was located. Eventually, defendant located Pierce's car parked behind Franklin's home located at 1511 Cleveland Avenue.
Having located Pierce's car, defendant approached Franklin's house and knocked on the door. Franklin answered the door and, according to Pierce, a verbal exchange occurred between defendant and Franklin. While defendant denies he spoke with Franklin, defendant does acknowledge that he asked Pierce to return home. Agreeable, Pierce drove her car home while defendant followed on his motorcycle. While the extent to which defendant and Pierce discussed their relationship at this time is somewhat unclear, according to Pierce, she did inform the defendant that she had become involved in a romantic relationship with Franklin.
On August 12, 1998, defendant allegedly left for a job interview at approximately 5:30 a.m. Defendant stated that he left in Pierce's car; however, before going to the interview, he went to Franklin's residence to, in defendant's words at trial, confront the "man of the house and find out what was going on." Defendant testified that he arrived at Franklin's house just as Franklin was leaving for work.
Defendant testified that a verbal confrontation began as he approached Franklin. According to defendant, Franklin was evasive in response to his questions concerning Pierce. By defendant's account, the exchange between the two was crude to say the least. Defendant contends that the confrontation became physical when Franklin attempted to kick him. Although she missed, after she got in her car to leave, defendant became angry and proceeded to smash both of the front door windows of Franklin's car in order to keep her from leaving. Because defendant had smashed the driver's side window, Franklin attempted to exit the front passenger door as defendant was in the process of smashing it as well. Defendant testified that as Franklin exited the car, she landed on top of him on the ground. At this time, defendant concluded that "it's time to get out of Dodge." Defendant states that he picked himself up off of the ground to leave because Franklin was yelling for help. As he left, defendant maintains that Franklin ran after him in order to "jump" him. According to defendant, he turned and caught Franklin in his arms. The two then fell to the ground, bumping Franklin's car on the way down. After coming to a rest, defendant contends that he stood up and walked away unaware that Franklin had been injured. Defendant specifically testified that Franklin's injuries were accidental, and that he neither intended nor wanted to become involved in a physical confrontation. Specifically, defendant testified: "The main point is I didn't want to fight her." (Tr. 508.) Defendant continued:
 Q. When you kicked the windows out you were pretty angry, were you not?
 A. * * * [W]hen she got in the car, gave me the finger and decided she was going to drive off, and I wanted to talk to her, I wanted her to tell me her and Pierce were lovers or whatever. And she got in the car. She tried to kick me.
 Q. So when you were picked off the ground by that time were you cooled down?
 A. I didn't cool down until I kicked the passenger side of the window out and she came out hollering. * * * [Tr. 508-509.]
At defendant's trial, the first witness to testify was Columbus Police Officer Michael Cone. Officer Cone was the first peace officer at the scene. He arrived just before 6 a.m. with his partner and found Franklin lying in the alley behind her home. Franklin's car was still running. Officer Cone testified that his first impression of the scene was that Franklin had been severely injured. As he stood over her, Cone observed a large amount of brightly colored blood coming from behind Franklin's left ear. Cone also noticed pieces of Franklin's skull and brain lying on the ground next to her. Officer Cone and his partner immediately called for an ambulance. As he secured the crime scene, Officer Cone stated that he did not find any bricks, fence posts, or any other object which, in his opinion, might have come into contact with Franklin's head when she fell, and which might have caused the injury she sustained.
The next witness to testify was Columbus Fire Department paramedic, Jeff Dhume. When Dhume arrived on the scene, he found Franklin lying on her right side with a large amount of blood about her head. Dhume observed some spontaneous breathing, but found Franklin not responsive to any verbal or painful stimuli. Further assessment revealed a large open skull fracture above Franklin's left ear. Dhume and his partner were unable to control the bleeding of Franklin's wound either at the scene or en route to the emergency room. Franklin remained completely unresponsive while being transported to The Ohio State University Medical Center.
The third witness to testify was Harriet Branham. Branham was awakened at approximately 5:30 a.m. on August 12, 1998, by what she thought was the sound of chains rattling. Thinking that her father's dog had gotten loose, Branham rose from her bed and looked out her open bedroom window into the alley behind her home. As she did, she heard Franklin yelling for help. As Branham looked out her window, she observed a man "just beating the daylights" out of Franklin. Branham testified that Franklin was being beaten about her head and that the blows were so severe that she "could hear the licks in [her] bedroom." After the man stopped beating Franklin, Branham watched him walk north up the alley with something dangling in his hand. Branham testified that the object appeared to her to be a sock filled with coins.
The other eyewitness to testify was Erica Allen. Allen was roused by her sister on the morning of August 12, 1998, who told her that someone was being beaten in the alley behind their home. As she looked out her window, Allen also observed a man standing over a woman whom he was beating. Allen also heard the blows that were being inflicted on Franklin. According to Allen, the beating continued for at least two or three minutes, and was quite severe.
During the prosecution's case in chief, Columbus Police Detective James McCoskey testified about his search of the vehicle driven by defendant on the morning of the assault. During the course of his search, McCoskey and his colleagues discovered a piece of bloody tissue located in close proximity to the driver's side seat belt attachment. The tissue was collected and sent to be analyzed along with a blood sample McCoskey had drawn from Franklin at The Ohio State University Hospital.
Columbus Police Criminalist, Sylvia Acton, testified that she examined the bloody tissue in question. Specifically, Acton stated that her experience, over twenty-four years, led her to conclude that the tissue was, in fact, brain tissue.
Dr. Raman Tejwani, a forensic scientist with the Columbus Police Crime Lab, testified regarding the analysis of the DNA samples taken from the tissue found in the automobile and the blood sample taken from Franklin. Dr. Tejwani testified that she conducted a PCR test upon the recovered tissue. As a result of her analysis, Dr. Tejwani concluded that the DNA taken from the tissue recovered from Ms. Pierce's car shared a very high statistical correlation to the DNA extracted from Franklin's blood. Dr. Tejwani testified that, to within a reasonable degree of professional certainty, the DNA extracted from the tissue matched Franklin's DNA.
In response to the evidence presented by the state, defendant presented character testimony from four individuals. Each of those individuals testified that defendant's reputation in the community was that of a peaceful person. Defendant also testified on his own behalf and admitted going to Franklin's residence for a confrontation on the morning of August 12, 1998. Defendant also admitted that a verbal and physical confrontation ensued and that he smashed the windows of Franklin's car in order to prevent her from leaving. Defendant denied, however, that he struck Franklin, and opined that her skull was fractured when the two fell to the ground.
At the close of the case, defendant made a Crim.R. 29 motion, which was denied. Thereafter, the jury deliberated and returned a verdict finding defendant guilty of both attempted murder and felonious assault.
In his first assignment of error, defendant argues both that the jury's verdict was not supported by sufficient evidence, and that it stands against the manifest weight of the evidence. The legal concepts of the sufficiency and weight of the evidence are both quantitatively and qualitatively distinct. Sufficiency is a term of art used to describe that evidence, which, as a matter of law, is legally sufficient to support a verdict. Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is synonymous with adequacy. When reviewing a conviction challenged on the basis of the sufficiency of the evidence, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found each of the essential elements of the crime proven beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
In order to establish a charge of attempted murder, there must be sufficient evidence to show that the defendant purposely attempted to cause the death of Tina Franklin. See R.C.2903.02 and 2923.02. In this case, defendant maintains there is insufficient evidence to establish that he intended to kill Franklin. However, upon consideration of the record as a whole, we find the evidence sufficient to support a finding by a rational trier of fact that all of the elements of attempted murder have been proven beyond a reasonable doubt.
At trial, defendant testified that he drove Pierce's car to Franklin's house on the morning of August 12, 1998, in order to confront the individual with whom Pierce was having an affair. Specifically, defendant admitted that he confronted Franklin demanding information about her relationship with Pierce. Defendant further testified that a verbal and physical altercation occurred, during which he kicked in the front two windows of Franklin's automobile. During the altercation, defendant claims that he began to leave when Franklin started yelling for someone to help her. Defendant then claims that Franklin turned the aggressor and "jumped" him, causing the two to fall to the ground. As stated above, defendant claims that after the two fell, he got up and walked away, not realizing Franklin had suffered an open skull fracture exposing her brain. However, two independent witnesses, Harriet Branham and Erica Allen, testified at trial that they observed from their respective windows a man savagely beating Franklin about the head as she lay on the ground.
In light of the evidence presented at trial, we are unable to accept defendant's contention that his conviction for attempted murder is not supported by sufficient evidence.
Although a judgment or conviction may be sustained by sufficient evidence, it may nevertheless stand in contrast to the manifest weight of the evidence. Thompkins, supra. When reviewing a verdict challenged to be against the manifest weight of the evidence, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment or conviction must be reversed. As set forth in Thompkins, the manifest weight of the evidence is:
 * * * "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." [Emphasis sic.] [Thompkins, at 387, citing Blacks Law Dictionary (6 Ed. 1990), 1594.]
When a judgment or conviction is challenged as being against the manifest weight of the evidence, the evidence is not construed most strongly in favor of the prosecution. Rather, the reviewing court must engage in a limited weighing of the evidence in order to determine whether there is competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra, citing State v. DeHass (1967),10 Ohio St.2d 230. Stated alternatively, a reviewing court will not reverse a conviction where there is substantive evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.Id.
Having carefully reviewed the transcript of defendant's trial, we are unable to find that defendant's conviction is against the manifest weight of the evidence. Notwithstanding defendant's testimony to the contrary, there was competent, credible evidence and testimony presented from which reasonable minds could find the defendant guilty beyond a reasonable doubt. Given the severity of Franklin's injuries; defendant's admission that he went to confront Pierce's lover; defendant's admission that he drove Pierce's automobile that morning in which tissue from Franklin was recovered; defendant's admission that an altercation ensued during which he smashed the windows of Franklin's automobile in an attempt to prevent her from leaving; and the testimony of the two eyewitnesses that they saw a man savagely beating Franklin with what appeared to be a sock full of metal coins; the jury acted within its province when it chose not to believe defendant's claim that Franklin suffered an open skull fracture when the two fell after Franklin allegedly "jumped" the defendant.
In light of the evidence presented at trial, we find that defendant's conviction is supported by sufficient evidence and does not stand in contravention of the manifest weight of the evidence. The evidence presented was sufficient to establish the offense of attempted murder. Moreover, there was substantial competent, credible evidence supporting a conclusion that defendant purposely attempted to cause Franklin's death. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant asks us to find that the trial court erred when it refused to instruct the jury on the elements of aggravated assault. It is well-settled that jury instructions must conform to the evidence actually presented and introduced at trial. Stated alternatively, an instruction on an offense of inferior degree is required when it is possible for the trier of fact to find a defendant not guilty of the greater offense, and guilty of a lesser or inferior offense. State v. Huertas (1990), 51 Ohio St.3d 22; State v.Kidder (1987), 32 Ohio St.3d 279; State v. Wilkins (1980),64 Ohio St.2d 382; and State v. Nolton (1969),19 Ohio St.2d 133.
As set forth by the Ohio Supreme Court in State v. Deem
(1988), 40 Ohio St.3d 205, and State v. Shane (1992), 63 Ohio St.3d 630, a jury instruction on aggravated assault is appropriate when there is evidence that the defendant's conduct was the result of legally sufficient provocation on the part of the victim. The provocation must be sufficient to bring on sudden passion or rage in the defendant. The provocation "must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. at 635.
The inquiry is a two-step inquiry. First, the objective standard set forth above must be met. Provided that it is, the inquiry shifts to whether this actor, under the unique circumstances pertaining to the alleged offense, was reasonably provoked by the victim. If no reasonable jury would find that the defendant was reasonably provoked by the victim, an instruction on aggravated assault is improper.
In this case, defendant stated that Franklin used crude language that angered him. However, the Ohio Supreme Court has explained that words, "no matter how insulting or inciteful" do not constitute legally sufficient provocation to incite the use of physical force. See Shane, supra, at 637, wherein the Ohio Supreme Court held that the use of deadly force in response to a confession of infidelity was simply "not an acceptable response to the confession of adultery." Id.
Moreover, defendant specifically testified that he had calmed down, did not want to fight a woman or anyone else, and was, in fact, leaving when Franklin allegedly jumped him. As such, there is no possible basis upon which to find that Franklin, by allegedly running toward him, incited the defendant to act in a fit of passion or rage. Rather, defendant states that the two simply fell, where after he picked himself up and calmly walked away.
In this case, we find that neither the objective or subjective standard for the giving of an instruction on aggravated assault has been met. As such, we also overrule defendant's second assignment of error.
For the foregoing reasons, both assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN, P.J., and LAZARUS, J., concur.