THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* KIDDER, APPELLEE
AND CROSS-APPELLANT.

[Cite as State *v.* Kidder (1987), 32 Ohio St. 3d 279.]

(No. 86-1808—Decided September 2, 1987.)

*Ronald C. Carey,* prosecuting attorney, for appellant and cross-appellee.

*J. Michael Dobyns,* for appellee and cross-appellant.

HOLMES, J.

## I

The main issue presented in this appeal is whether our *per curiam* decision in *State* v. *Rohdes* (1986), 23 Ohio St. 3d 225, 23 OBR 382, 492 N.E. 2d 430, in any way altered the statutory-elements test for determining lesser included offenses first announced in *State* v. *Kuchmak* (1953), 159 Ohio St. 363, 50 O.O. 327, 112 N.E. 2d 371. Although *Rohdes* did tend to cloud the picture of this area of the law, we answer such query in the negative, for reasons which follow.

R.C. 2945.74 provides, in pertinent part:

"* * * When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense. * * *" See, also, Crim. R. 31(C).

A criminal defendant is entitled to a lesser-included-offense instruction, however, only where the evidence warrants it. *Beck* v. *Alabama* (1980), 447 U.S. 625, 636, fn. 12; *Keeble* v. *United States* (1973), 412 U.S. 205; *State* v. *Kilby* (1977), 50 Ohio St. 2d 21, 4 O.O. 3d 80, 361 N.E. 2d 1336; *State* v. *Nolton* (1969), 19 Ohio St. 2d 133, 48 O.O. 2d 119, 249 N.E. 2d 797. Thus, the trial court's task is twofold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater.

The state argues that, prior to *Rohdes,* in Ohio the question of whether the lesser offense exists had always been a matter of strict statutory definition, focusing on the elements of the offenses. In support, it cites a long line of cases from this court, since at least *State* v. *Kuchmak, supra.* Appellee Kidder argues that by our decision in *State* v. *Rohdes, supra,* we held that whether a lesser offense exists is a matter of fact, focusing on the evidence presented at trial. We

hereby clarify or modify such a broad holding in *Rohdes,* and restate the court's position of favoring the strict statutory-elements test for its clarity and evenhandedness in application.

The two-step, lesser-included-offense statutory-elements test was stated in *State* v. *Kuchmak, supra,* at 366-367, 50 O.O. at 328-329, 112 N.E. 2d at 373, as follows:

"* * * [I]f all the elements of a separate offense are present with others in an offense charged in an indictment, such separate offense is a lesser included offense; or, where all the elements of an offense are included among the elements of a charged offense, the former is a lesser included offense. But to warrant a conviction of such lesser included offense, another limitation must be taken into consideration. A court may not charge upon, and a defendant may not be found guilty of, a lesser offense, unless the evidence tends to support each of the necessary elements of such offense."

This test, including the statutory-elements step, has since been enhanced and redefined, but has never been overruled. In *State* v. *Hreno* (1954), 162 Ohio St. 193, 55 O.O. 97, 122 N.E. 2d 681, paragraph two of the syllabus, we made it clear that *all* the elements of the lesser offense must be present in the greater offense, with others, such that it would be impossible to commit the greater offense without also having committed the lesser. In other words, the lesser offense must be *necessarily* included in the greater. See *Heller* v. *State* (1873), 23 Ohio St. 582; 3 Wright, Federal Practice & Procedure: Criminal 2d (1982) 21, Section 515 (construing Fed. R. Crim. P. 31[c]).

The second step of this test, giving a lesser-included-offense charge *only when supported by the evidence,* was underscored in *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 31 O.O. 2d 60, 206 N.E. 2d 198. The failure to give an instruction in such circumstance amounts to prejudicial, reversible error. *Id.* at syllabus; see *Bandy* v. *State* (1921), 102 Ohio St. 384, 131 N.E. 499. If an instruction is not given when warranted by the evidence, a jury may convict the defendant of the greater charged offense, even though not convinced of guilt beyond a reasonable doubt, simply because the evidence shows he was obviously guilty of *some* offense. *Keeble* v. *United States, supra.* In *State* v. *Nolton, supra,* we modified this step of the test to make it clear that it operated for the benefit of both the state and the accused. *Id.* at 135, 48 O.O. 2d at 120, 249 N.E. 2d at 799.

This entire two-step process was succinctly restated and clarified in *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 18 O.O. 3d 528, 415 N.E. 2d 303, and again in *State* v. *Davis* (1983), 6 Ohio St. 3d 91, 6 OBR 131, 451 N.E. 2d 772. In *Wilkins, supra,* at 384, 18 O.O. 3d at 530, 415 N.E. 2d at 306, the statutory-elements step was clarified by dividing the analysis into three parts:

"An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

*Wilkins* also modified the second step of the test by removing some of the confusion apparently caused by the holding in *Nolton.* As we explained in the second paragraph of the syllabus in *State* v. *Davis, supra,* when examining the evidence presented, it is only where the trier of fact could

reasonably find against the state and for the accused on one or more of the *elements* of the crime charged, and for the state and against the accused on the *"remaining elements, which by themselves"* (emphasis added) form the lesser included offense, that an instruction on that lesser included offense is warranted.

See, also, *State* v. *Solomon* (1981), 66 Ohio St. 2d 214, 20 O.O. 3d 213, 421 N.E. 2d 139.

In *State* v. *Rohdes, supra,* this court was faced with an indictment for murder and a request by the defendant for a lesser-included-offense instruction on involuntary manslaughter. The underlying misdemeanor involved in the manslaughter instruction was aggravated menacing. R.C. 2903.04(B), R.C. 2903.21. In our *per curiam* opinion, we began with the three-prong statutory-elements step announced in *Wilkins,* and noted that only the second prong was at issue, "since involuntary manslaughter by aggravated menacing is obviously of lesser degree than murder and the mental element of intent required for murder is not required to prove the commission of involuntary manslaughter." *Id.* at 226, 23 OBR at 383, 492 N.E. 2d at 432.

Unfortunately, although the result was correct, the analysis which followed was confusing, if not flawed. The underlying facts, *i.e.,* those related to the aggravated menacing charge, were prematurely considered in determining whether the murder could have been committed without also committing involuntary manslaughter. This was contrary to our longstanding rule that the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense. The facts become relevant only in the determination of whether a jury could reasonably convict the defendant of the lesser included offense as defined.

Despite this misfocused analysis, the *Rohdes* court noted that involuntary manslaughter is a lesser included offense of murder. *Id.* at 227, 23 OBR at 384, 492 N.E. 2d at 433, citing *State* v. *Johnson* (1983), 6 Ohio St. 3d 420, 6 OBR 466, 453 N.E. 2d 595, reversed and remanded on other grounds (1984), 467 U.S. 493, 497, fn. 6. Involuntary manslaughter is always and necessarily a lesser included offense of murder because murder cannot ever be committed without also committing or attempting to commit a felony or a misdemeanor. See *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 218, 15 OBR 311, 357, 473 N.E. 2d 274, 310; R.C. 2903.02, R.C. 2903.04. The statutory-elements step having been met, the evidence in *Rohdes* concerning the underlying misdemeanor became relevant in determining whether the jury should have been charged on the lesser offense. *Id.* at 227, 23 OBR at 384, 492 N.E. 2d at 433.

Again, to clarify, the entire lesser-included-offense analysis, for purposes of R.C. 2945.74, is as follows: an offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot, as statutorily defined, ever be committed without the offense of the lesser degree also being committed, and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. Even though so defined, a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state

and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense.

This approach is truest to the scheme of the General Assembly, which has strictly defined criminal violations in terms of descending degrees of culpability, R.C. 2901.22, and descending degrees of proscribed conduct. See R.C. 2901.02. It offers the most clarity to both practitioners and judges, treating defendants and prosecutors evenhandedly, and discourages the parties from manipulating the proof to accommodate all factually possible lesser offenses. See Ettinger, In Search of a Reasoned Approach to the Lesser Included Offense (1984), 50 Brooklyn L. Rev. 191, 201. It also best facilitates the requirement that an accused have notice of the offenses charged against him. Sixth Amendment to the United States Constitution; Section 10, Article I of the Ohio Constitution; R.C. 2941.05; Crim. R. 7; *State* v. *Schaeffer* (1917), 96 Ohio St. 215, 117 N.E. 220; Blair, Constitutional Limitations on the Lesser Included Offense Doctrine (1984), 21 Am. Crim. L. Rev. 445, 451-455. Any language in *Rohdes* which is contrary to this two-step analysis is hereby disapproved.

In the case *sub judice*, appellee Kidder requested a charge of aggravated menacing as a lesser included offense of attempted murder. The elements of attempted murder, as defined by R.C. 2923.02 and 2903.02, are (1) purposely, (2) engaging in conduct which, if successful, would (3) cause another's death. The elements of aggravated menacing, R.C. 2903.21, are (1) knowingly, (2) cause another to believe, (3) that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family. Aggravated menacing, a first-degree misdemeanor, is a crime of lesser degree than attempted murder, a first-degree felony. However, murder can be committed without the victim's being aware of impending serious physical harm. Thus, the second prong of the statutory-elements test is not met, and no set of facts adduced at trial would have warranted a charge to the jury on the lesser, but not included, offense of aggravated menacing. The trial court properly refused to give such an instruction.

## II

In his cross-appeal, Kidder cites as error two events which occurred at his trial. First, he argues that certain portions of an audio-taped custodial conversation between him and two deputy sheriffs should have been excised prior to going before the jury. He complains of three types of statements: (1) factual conclusions and allegations by the deputy sheriffs about Kidder's veracity,[1] (2) the deputies' hearsay statements regarding the victim's emotional state during the confrontation,[2] and (3) statements of Kidder relating to dropping the charges

---

[1] For example, Lieutenant Smith's comments included:

"See, his [Grant's] story coincides with all the evidence we've gathered. Yours doesn't. That kind of makes it that you're not telling the whole truth here. * * * Now his story supports that evidence. Yours doesn't."

[2] Such statements, again by Lieutenant Smith, were:

"He fully believes in his mind that you were trying to kill him. * * * If he didn't think you tried to kill him, he wouldn't have called us. * * * We know that he ran out of the house and left to call the police because he was terrified that you were going to kill him."

against him and efforts to "plea bargain."[3] We find that the jury was indeed permitted to consider inadmissible hearsay statements made by the interrogating officers, but find, as did the court of appeals, that such statements were not prejudicial to Kidder.

The state contends that the hearsay and opinion statements of the deputies constituted adoptive admissions by Kidder, pursuant to Evid. R. 801(D)(2). We cannot agree. That rule provides that a statement is not hearsay, and thus admissible, if it "is offered against a party and is * * * a statement of which he has manifested his adoption or belief in its truth." Evid. R. 801(D)(2)(b). Given the context and circumstances surrounding the deputies' statements, it is not apparent that Kidder would have been able to deny the statements, particularly those relating to the victim Grant's state of mind. Thus, he cannot be said to have manifested his adoption of such statements, and it was error to present them to the jury as adoptive admissions. In deciding whether admission of these hearsay statements was unduly prejudicial to Kidder, "[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the * * * [statements] on the minds of an average jury." *Harrington v. California* (1969), 395 U.S. 250, 254. In the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt. *Id.; United States* v. *Hasting* (1983), 461 U.S. 499; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 290, 6 OBR 345, 353, 452 N.E. 2d 1323, 1333. We find the error here was not so prejudicial as to require reversal.

Richard Grant testified that Kidder, prior to firing the first round at him, stated, "I'm sorry, Rick, I have to kill you," and that during the struggle, Kidder continued, "I am sick and tired of all you and your rich friends." "I am going to get them too." "I have been a prisoner in this house for six months and now you are my prisoner." "Before the night is over with we are both going to die." Grant further testified that after the gun was put down by Kidder, Kidder picked up a butcher knife from the kitchen and threatened Grant with that. Grant's neighbor testified that when he let Grant in, Grant was very excited and his whole body was shaking as "he said his roommate was trying to kill him." Both Mueller and Maxwell testified that Kidder entered their home, told them "he blew Richard's face off" and ordered them at gunpoint to accompany him south of Hillsboro. They testified the gun was always trained in their direction and Mueller testified that, even after they split up in separate cars, he feared for Maxwell who was

---

[3] Kidder's statements included: "I mean, okay, I mean like if I was straight up about everything, I mean, would you guys consider trying to get some of that shit dropped against me?" "* * * I mean, what do you think my chances is of getting this attempted murder thing dropped off?" To which Captain Cluxton replied:

"Nobody mentioned anything about getting it dropped off. Something like that isn't up to us, Bob. If there's going to be a reduction in the charges, that has to be something that's agreed upon with the prosecutor, defense attorney, and the court. We don't have any authority or say as far as being able to do that. If we did, we'd sit here and deal with people all day and night and get all kinds of crimes solved."

being held at gunpoint in the rear automobile. Arresting officers found the shotgun in the vehicle Kidder was driving, and shotgun shells and credit cards belonging to Grant on Kidder's person. This physical evidence, along with the knife recovered from Grant's kitchen and photographs of the holes blown in Grant's apartment, were presented to the jury. The defense called no witnesses.

Admissible portions of the taped interrogation demonstrate Kidder's initial reluctance to talk and then, after probing and prodding by the investigating officers, his own version of the events indicating his intention to merely frighten Grant and a general denial of the kidnapping of Maxwell and Mueller. This was the jury's only exposure to these defenses. At the same time, the jury was fully aware of the context in which the inadmissible hearsay and opinion statements of the police were made: the officers were engaged in an interrogation of a criminal suspect. In this context, the impact on the average jury would have been much less than the same statements made by a police officer on the witness stand at trial. Thus, in light of the overwhelming evidence presented on all the charged crimes, the error in not excising certain portions of the transcript was not so prejudicial as to require reversal.

Next, we agree with the state that the statements made by Kidder relative to dropping the charges against him did not amount to plea negotiations, which would be rendered inadmissible by Evid. R. 410.[4] His statements do not contain an offer to plead guilty to any charge, nor do they indicate a serious effort at negotiating such a plea. Evid. R. 410 was not intended to be used to hamper police at such an early investigatory stage. 2 Weinstein & Berger, Weinstein's Evidence (1979) 410-417, Paragraph 410(a).

Finally, cross-appellant Kidder alleges that prejudicial error occurred on the second day of trial when a juror observed him bound in shackles in the hallway outside the courtroom. Defense counsel immediately requested that the court, which had earlier ruled the defendant should appear in court unshackled, conduct a *voir dire* of the juror to determine whether she was prejudiced by what she had seen. The trial court refused, feeling it improper to focus any undue attention on the matter which might compound the problem. Instead, the court gave the following instruction to the entire jury panel upon their return to the courtroom:

"* * * I want to reiterate the instructions that I have given to you before. That anything that you saw or heard outside of this Courtroom related to this case should be deleted from your mind. You determine this case on what you see and hear in this Courtroom and nothing else."

Although we recognize that no one should be tried while shackled, absent unusual circumstances, *Illinois* v. *Allen* (1970), 397 U.S. 337, 51 O.O. 2d 163, we agree with the view taken by

---

[4] Evid. R. 410 provides, in pertinent part:

"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of no contest, or the equivalent plea from another jurisdiction, or a plea of guilty in a violations bureau, or of an offer to plead guilty or no contest to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. * * *"

several federal circuit courts that the danger of prejudice to defendants is slight where a juror's view of defendants in custody is brief, inadvertent and outside of the courtroom. *United States* v. *Robinson* (C.A. 8, 1981), 645 F. 2d 616, 617, certiorari denied (1981), 454 U.S. 875; *United States* v. *Taylor* (C.A. 2, 1977), 562 F. 2d 1345, 1359, certiorari denied *sub nom. Salley* v. *United States* (1977), 432 U.S. 909; *United States* v. *Crane* (C.A. 6, 1974), 499 F. 2d 1385, 1389, certiorari denied (1974), 419 U.S. 1002. Any error which may have resulted from the failure to conduct a *voir dire* of the lone juror was harmless, *State* v. *Williams, supra,* given the brief, single observation and the general corrective instruction given thereafter.

### III

In summary, we reverse the court of appeals' finding that a lesser-included-offense instruction on aggravated menacing was warranted by the facts herein. Aggravated menacing is not a lesser included offense of attempted murder, as it is not necessarily included within the greater crime. Further, we find that the admission of the hearsay and opinion statements made by interrogating deputy sheriffs to Kidder was harmless error, and affirm the court of appeals relative to the cross-appeal. The judgment of the trial court is accordingly reinstated.

*Judgment accordingly.*

MOYER, C.J., LOCHER, DOUGLAS and WRIGHT, JJ., concur.

H. BROWN, J., concurs in part and dissents in part.

SWEENEY, J., dissents.

HERBERT R. BROWN, J., concurring in part and dissenting in part. I join in both paragraphs of the syllabus and in Part I of the majority opinion. Further, the majority has properly recognized that the trial court erred by admitting into evidence the audiotape containing hearsay statements made by the interrogating officers.

The police officer statements, which came into evidence, were in part:

"* * *[R]ight now, *everything we've got shows that you're guilty of 'x' number of offenses. * * * We know that he [Grant] ran out of the house and left to call the police because he was terrified that you were going to kill him. * * * We know that you went down and took a few other people hostage. * * * Those things are facts. They can be proved. * * * See, his story coincides with all the evidence we've gathered. Yours doesn't. That kind of makes it that you're not telling [us] the whole truth here. * * * Now his story supports that evidence. Yours doesn't."* (Emphasis added.)

The majority says the error in putting these police conclusions in front of the jury was harmless. While the error may have been harmless with respect to Kidder's conviction for the two kidnapping charges, it most certainly is not harmless with respect to his conviction for attempted murder. For this reason, I dissent.

"Attempted murder" has been defined by this court as a "specific intent crime" consisting of "purposely engaging in conduct which, if successful, would constitute the offense of murder." *State* v. *Fox* (1981), 68 Ohio St. 2d 53, 55, 22 O.O. 3d 259, 260, 428 N.E. 2d 410, 412. "Murder" is defined in R.C. 2903.02(A) as "purposely caus[ing] the death of another." "Aggravated menacing" is defined in R.C. 2903.21(A) as "knowingly caus[ing] another to believe that the offender

will cause serious physical harm to * * * such other person * * *."

The majority states that "[i]n the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt." Applying this test, Kidder's attempted murder conviction must be reversed unless the record contains *overwhelming* admissible evidence that Kidder intended to *kill* Grant, rather than only to *scare* him.

The majority cites testimony and physical evidence in the record which are consistent with Kidder's having an intent to kill. Nonetheless, all this evidence is equally consistent with his having only an intent to frighten. While I believe the evidence would be *sufficient* to support a jury verdict finding Kidder guilty of attempted murder, it is far from *overwhelming*.

Further, the majority places unwarranted reliance on the setting in which the police officers' statements were made, to wit: in an interrogation of a criminal suspect. The majority speculates that "[i]n this context, the impact on the average jury would have been much less than the same statements made by a police officer on the witness stand at trial." In so stating, the majority lays claim to an ability (which I lack) to read the minds of "average" jurors. In any event, I fail to see how the setting in which the officers spoke renders the evidence of Kidder's guilt any more or less "overwhelming." And that is the test the majority acknowledges that it must meet.

I would hold that the trial court committed prejudicial error with respect to Kidder's attempted murder conviction. Accordingly, I must dissent on that issue.

SWEENEY, J. dissenting. In *State v. Rohdes* (1986), 23 Ohio St. 3d 225, 23 OBR 382, 492 N.E. 2d 430, the defendant had been indicted for murder with a firearm specification. At the conclusion of the evidence, the state requested that the court instruct the jury "on involuntary manslaughter *based on the underlying offense of aggravated menacing.*" (Emphasis added.) Said instruction was given and the defendant was later convicted of that offense. On appeal, the defendant argued that the instruction was improper since involuntary manslaughter based on the underlying offense of aggravated menacing was not a lesser included offense of murder. This argument was predicated on the self-evident observation that in some instances murder can be committed without committing aggravated menacing (*i.e.,* one may be murdered without creating apprehension in the mind of the victim that serious physical harm is likely to befall him). The decision of the court, concurred in by some of the members of today's majority, rejected the argument by observing that it "ignores Ohio law requiring the focus to be on what elements a trier of fact could reasonably find from the evidence." *Rohdes, supra,* at 227, 23 OBR at 384, 492 N.E. 2d at 432. Thus, if the evidence would support the lesser offense, even though it contains an element not present in the greater charge, a jury instruction is warranted and a conviction is sustainable with respect to the lesser offense.

In the case *sub judice*, the converse of the *Rohdes* situation is presented. Here, the defense requested, on the basis of *Rohdes*, a jury instruction on *aggravated menacing*. The trial court denied the request and the court of appeals reversed on authority of *Rohdes*. This court today eschews the *Rohdes* evidence test and adopts explicitly an

elements test for lesser included offenses. My disagreement with the majority decision does not concern the relative merits of the two doctrines. Rather, I am disturbed that the holding today leaves the impression on bench, bar and the general public that the rule varies with the outcome of the case. While the evidence test was sufficient to sustain a conviction on a lesser charge in *Rohdes*, this test apparently is insufficient to require an instruction on the lesser charge in the present case. Under the facts of this case, I believe the jury, if given the opportunity, could have reasonably concluded that defendant was guilty of the lesser offense of aggravated menacing. Given the "modification" of the *Rohdes* test by the majority and the prejudicial impact thereof in the instant case, it is my urgent hope that today's holding, at the minimum, will result in a comprehensible standard by which to ascertain lesser included offenses. It is my further hope that, once announced, the standard will be applied consistently in the future.

An equally troubling aspect of the majority opinion is its summary consideration of the trial court decision to admit, over objection, clearly inadmissible hearsay evidence contained in the tape recording of an interview between investigating officers and the accused. On no less than seven separate occasions, the deputy sheriffs conducting the interview engaged in conclusory statements as to the probative value of the case against the defendant. Certain crucial references bore directly on the intent of defendant to commit murder. In most instances, the references were phrased in such a manner as to create in the minds of the jurors a conclusive presumption relative to the defendant's guilt. On three occasions the officers commented adversely upon the truth and veracity of the defendant. One excerpt from the tape is particularly illuminating. In the course of the interview the deputy sheriff remarked:

"We know these things happened, okay. The charges are there. We know that you and Rick had an argument. We know that you threatened him. We know that you either tried to take his head off with that shot gun or you tried to scare the hell out of him by firing that thing. We know that later on you guys got in an argument and then he had his hand on the shot gun and another shot was fired. We know that later on you went into the kitchen (inaudible) talking to him for awhile and you got a knife. We know that he ran out of the house and left to call the police because he was terrified that you were going to kill him. We know that you took his car. We know that you went down and took a few other people hostage and took their money and took them down to Hillsboro and then dumped them off and then went to Portsmouth. Those things are facts. They can be proved."

It was highly inappropriate for the trial court to admit this statement into evidence. It is not only rife with hearsay but is composed almost exclusively of conclusory remarks concerning the weight and probative value of the evidence. The court, prior to submitting the case to the jury, quite appropriately instructed its members that the opening and closing statements by counsel and the characterizations of the testimony therein were not evidence. It is, therefore, absolutely incongruous that the court would permit the characterization of the evidence by an investigating officer to be considered by the jury and to allow such references to go unchallenged and unexplained. The error is particularly acute where such unsubstantiated in-

ferences are compounded by the probable playing of the inadmissible and prejudicial taped testimony repeatedly in the jury room.

The Rules of Evidence have been adopted to assure that only probative and non-prejudicial evidence be considered by a jury. If the rules are to be an effective tool in protecting the integrity of the judicial process, they cannot be disregarded during trial where to do so would result in the presentation to the jury of clearly inadmissible evidence. Particularly where violation of the rules occurs in a criminal context, procedural due process demands that close scrutiny be given to the prejudicial impact occasioned thereby. In the case at bar, the clear disregard for a rudimentary principle of evidence law cannot be characterized as harmless beyond a reasonable doubt.

I must therefore dissent from the holding of the majority today. It is my belief that the Rules of Evidence and the law pertaining to lesser included offenses must be comprehensible, enforceable and consistent. When viewed in this context, the conclusion is inescapable that the judgment of the court of appeals should be affirmed as to its finding warranting a lesser-included-offense instruction and reversed as to defendant's cross-appeal herein.