Defendant-appellant appeals from his jury conviction for assault, felonious assault, kidnapping, and domestic violence with three accompanying repeat violent offender specifications.
On August 27, 1998, defendant was indicted for a series of crimes against his girlfriend Vicki Goodrich. Count one of the indictments alleged that, on August 4, 1998, defendant committed one charge of felonious assault, with a repeat violent offender specification based on his prior conviction for robbery. Counts two through four alleged that, on August 9, 1998, defendant committed another offense of felonious assault, in addition to kidnapping, and domestic violence. The felonious assault and kidnapping charges had accompanying repeat violent offender specifications.
On October 20, 1998, the matter proceeded to a jury trial. The prosecution presented testimony from four witnesses: the victim, two of her neighbors who observed the second beating, and a police officer who responded to a call between the two beatings and after the second beating. The victim lived with defendant until he was arrested on an unrelated offense. On August 3, 1998, after his release from jail, defendant returned to her residence. The victim stated defendant beat her the next day. She woke up in the hospital and left without obtaining treatment.
Defendant continued to beat her over the course of the next several days. On August 8, 1998, Officer Mark Medwid responded to the victim's apartment after a telephone call about a male beating a female. The victim appeared bruised and frightened, but denied that defendant, who was the only other person in the apartment, had beaten her. Officer Medwid notified the battered women's hotline and told the victim how to contact them for help.
The following day, the victim decided to leave defendant. As she was walking out of the building, defendant was walking in. Defendant again beat her, this time in the plain view of two neighbors. When one of the neighbors was attending to the victim, defendant grabbed the victim and dragged her outside. Paramedics and police arrived at the street corner where defendant was holding the victim, who had by this time passed out. Officer Medwid observed new bruises, fresh blood and a tooth missing.
Defendant testified and presented testimony from his aunt. She testified that, after defendant's release from jail on August 3, 1998, defendant and the victim came over to her house to pick up a bag. She was not present and did not observe any of the subsequent beatings.
Defendant testified on his own behalf. At the outset of his testimony, defendant offered extended non-responsive answers to questions. He repeatedly announced what a good Samaritan he was and made gratuitous negative comments about the victim. Thereafter, the following occurred:
 DEFENDANT: Right. One of my brothers wired money from Detroit to help her get —
THE COURT: Just a minute.
DEFENDANT: The apartment was —
 THE COURT: Let me explain something to you, okay? When I tell when I start Just a minute.
DEFENDANT: My life is on the line here.
THE COURT: Just a minute.
DEFENDANT: I'm trying —
 THE COURT: Just a minute. And I want to tell you something right now, Richard [defense counsel]. If your client interrupts me again, I'm going to find him in contempt of this Court, put him in a holding cell and he will not testify. When I sustain an objection, he will be quiet.
DEFENDANT: Yes, sir.
 THE COURT: I want a five-minute recess. All rise for the jury.
 (Thereupon, a recess was taken.) — (Thereupon, the jury was excused and the proceedings were as follows:)
 THE COURT: We're out of the presence of the jury. I'm going to very calmly state for the record that I have seen this defendant arguing with his attorney, he's now argued with his attorney and with me in front of this jury, and I very much have a security concern. This guy has a very dangerous record, we have repeat violence specification [sic] on the indictment, and I want him cuffed and he will remain cuffed in this courtroom.
 If there is a further outburst from him, he will not testify. One more further outburst from you, one more opportunity where you talk over me or attempt to shove me down, you will automatically not testify. Do you understand me?
DEFENDANT: Yes, sir.
 DEFENSE COUNSEL: For purposes of the record I object to him being cuffed in the presence of the jury so it is on the record.
(Tr. 219-221.)
Defendant thereafter completed his testimony without further incident. He denied beating the victim on either August 4, 1998 or August 9, 1998. He stated the victim told him another person had beaten her.
The trial court instructed the jury at the conclusion of the case. After making introductory comments, the trial court stated as follows:
 Keep a couple things in mind. We want you to decide the case based on the evidence that you have heard and the exhibits. You have seen the witnesses, you will have the exhibits and base your conclusion on that evidence and these instructions. Remember not to be influenced by any bias or prejudice either for or against the State of Ohio. And yesterday you saw the defendant and I had a pretty sharp conversation, you may have noticed he became cuffed after that conversation. That was done for everyone's security. If you think that I have reached a conclusion on this case, disregard it because my opinion is not important. Also, you're not to have any sympathy either for or against this defendant or any sympathy either for this victim that would lead you to enter into a verdict that is not appropriate.
(Tr. 293-294.) The jury found defendant guilty of the lesser offense of assault on the first count and guilty of felonious assault, kidnapping and domestic violence on the remaining charges. Through newly appointed appellate counsel, defendant timely appeals, raising the following sole assignment of error:
 DEFENDANT-APPELLANT ROBERT NELSON WAS DENIED HIS RIGHT TO A FAIR TRIAL, THE PRESUMPTION OF INNOCENCE AND DUE PROCESS WHEN, DURING HIS TRIAL, THE TRIAL COURT ORDERED THAT HE BE HANDCUFFED FOR THE REMAINDER OF HIS TESTIMONY AND THE TRIAL.
This assignment lacks merit.
Defendant argues that the record was not sufficient to support the trial court's order to handcuff defendant during his testimony. His brief on appeal argues that he admittedly had difficulty answering only the question that he was specifically asked, and his answers had to be cut short by the court. (Id. at p. 6.) He contends, however, the record shows merely that he was eager to testify, not that he was hostile. Defendant dismisses the trial court's statement that defendant also argued with his own trial attorney during recess, on the grounds that the record does not contain any evidence other than the trial court's observation of the incident.
Defendant also complains the trial court did not warn him in advance that he would be handcuffed for engaging in outbursts. Finally, he contends that the trial court's instruction to the jury to disregard the handcuffs made the entire incident even more prejudicial.
The Ohio Supreme Court has held that a trial court's decision whether to shackle a defendant will not be reversed on appeal absent an abuse of discretion. State v. Richey (1992), 64 Ohio St.3d 353,358. However, no one should be tried while shackled, absent unusual circumstances. Id., quoting State v. Kidder (1987), 32 Ohio St.3d 279, 285. A defendant in a criminal trial is entitled to appear unfettered if he properly conducts himself while under arrest and during trial. State v. Sublett (June 12, 1991), Medina App. No. 1971, unreported at p. 1.
On appeal we are presented with only a cold transcript of the proceedings. The words recorded in the transcript quoted above reveal, at a minimum, that defendant was aggressive and resisted submitting to the authority of the court. The record does not reflect the volume or tone of defendant's voice or the physical manner in which he made the statements. Thus, it is difficult for us to challenge the trial court's characterization of the defendant's behavior at the time as threatening.
The trial judge's statement that he observed defendant confront and argue with his own attorney, after defendant's discussion with the judge, supports the trial court's finding. While defendant's newly appointed counsel seeks to dispute that such an argument occurred, neither defendant nor his trial counsel did so in the trial court at the time it was made. Under the circumstances, we have no basis to dispute the trial court's observation.
We reject defendant's argument that the trial court was required to warn him in advance that he would be handcuffed if he engaged in aggressive behavior. First, defendant never raised this argument in the trial court, so any such claim of error is deemed to be waived. State v. Richey, supra at 358; State v. Awan (1986),22 Ohio St.3d 120, 122. Moreover, a witness should know to behave himself in court regardless of whether the trial court makes such an explicit warning. The trial court stopped the proceedings once without imposing this remedy and did not find it was necessary to shackle defendant until after he subsequently began another argument with his counsel.
We also reject defendant's newly minted argument that the trial court's instruction to disregard the handcuffs was prejudicial. Defendant likewise did not object to the instruction in the trial court and, by failing to do so, waived any claim of error. Id. Moreover, jurors are presumed to follow the trial court's instructions. E.g., Pang v. Minch (1990), 53 Ohio St.3d 186
. The trial court specifically instructed the jury to decide the case based upon the evidence and there is no indication that the jurors disregarded their oaths to do so.
We agree with defendant that shackling should be reserved for cases involving highly disruptive misconduct or when necessary to ensure the safe and orderly progress of trial. It may be that the judge was not judicious and should have provided advance warning. However, shackling a defendant after a mid-trial altercation is not per se reversible error. Even if defendant were improperly shackled as he contends on appeal, he has failed to show any resulting prejudice to warrant reversal. State v. Sublett, supra.
The evidence of defendant's guilt in the case at bar was overwhelming. Defendant had beaten the victim over the course of almost a week prompting concerned neighbors to call the police. Multiple independent eyewitnesses observed defendant commit felonious assault, kidnapping, and domestic violence during the second incident on August 9, 1998. Photographs admitted into evidence depicted numerous bodily injuries in various stages of the healing process.
The jury found defendant guilty of only the lesser offense of assault on August 4, 1998, although there was substantial evidence from the victim that he committed the more serious crime of felonious assault. If the jury had in fact been blindly prejudiced against him because he wore handcuffs during trial, as defendant now argues, it is not clear the jury would have found him guilty of a lesser charge. Under the circumstances, defendant has failed to show any reversible error.
Accordingly, defendant's sole assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and KENNETH A. ROCCO, J., CONCUR.
 __________________________________ DIANE KARPINSKI, PRESIDING JUDGE