DECISION AND JUDGMENT ENTRY
Defendant-Appellant Troy Jonas was convicted of four criminal offenses at a jury trial held in the Athens County Court of Common Pleas. All four offenses were committed while he was incarcerated in the Southeast Ohio Regional Jail in Nelsonville, Ohio: (1) criminal damaging, a violation of R.C. 2909.06(A)(1), for destroying a prison telephone; (2) abduction, a violation of R.C. 2905.02(A)(2), for cornering and forcefully detaining a corrections officer in appellant's cell; (3) vandalism, a violation of R.C. 2909.05(B)(2), for spreading his excrement in his cell and the prison hallway; and (4) arson, a violation of R.C. 2909.03(A)(3), for setting his cell ablaze.
Appellant now appeals asserting four assignments of error. The first three assignments of error allege that he was deprived of due process of law and a fair trial because (1) the trial court failed to instruct the jury on unlawful restraint as a lesser included offense of abduction; (2) he was forced to defend himself at a single trial for four dissimilar offenses that occurred on four separate occasions; and (3) the state failed to proffer sufficient evidence for a vandalism conviction for the spreading of feces throughout his cell. In his Fourth Assignment of Error, appellant claims his due-process rights were violated by the use of Ohio's statutory definition of "reasonable doubt," which, he alleges, permits convictions based on a standard of proof less than that required by the federal constitution.
Regarding the First Assignment of Error, we find the lower court did not abuse its discretion by refusing to include a jury instruction for the lesser included offense of unlawful restraint as there was no evidence proffered to support the inclusion of such an instruction.
In respect to the Second Assignment of Error, we find that appellant failed to renew his misjoinder objection at either the close of the state's case or at the conclusion of all of the evidence. Accordingly, the objection was waived by appellant and cannot now be addressed by this Court.
Concerning the Third Assignment of Error, we find contaminated fecal clean-up costs to be the very sort of damage contemplated by the vandalism statute. Further, we find sufficient evidence was adduced at trial to support the finding of fact that $1,440.51 was a reasonable fee for the removal of appellant's excrement.
Regarding the Fourth Assignment of Error, we find nothing in the record indicating that appellant preserved his objection to the trial court's use of the Ohio statutory definition of "reasonable doubt" in the casesub judice. Even assuming arguendo that this objection had been properly preserved, we are bound by the clear mandate of the Supreme Court of Ohio, which held the very definition used by the trial court to be constitutional.
Therefore, appellant's assignments of error are OVERRULED, and the judgment of the Athens County Court of Common Pleas is AFFIRMED.
STATEMENT OF THE CASE AND FACTS
Our review of the record reveals the following facts pertinent to the instant appeal. Defendant-Appellant Troy Jonas wreaked havoc for a five-month period while he was incarcerated in the Southeast Ohio Regional Jail (SORJ) in Nelsonville, Ohio. Appellant resented being incarcerated and had become increasingly unruly. The following four events, relevant to the appeal sub judice, occurred while appellant was incarcerated at SORJ.
The first event occurred on May 9, 1998. A corrections officer, Priscilla Riddle, approached appellant while patrolling a common area of SORJ. She found appellant chewing on a telephone that had been ripped from the wall. It was estimated that it would cost $570 to replace the destroyed property.
The second event occurred on June 18, 1998. Sergeant Brian Menegay entered appellant's cell to remove a mop bucket after appellant had finished cleaning his cell. Upon entering the cell, appellant cornered Menegay by swinging a mop-wringer — a hefty device used to wring the water out of a mop — and threatening physical injury if the officer attempted to escape.
Appellant was aware of SORJ emergency procedures and attempted to prevent Menegay from implementing them while he was cornered in appellant's cell. SORJ corrections officers are not armed. In emergency situations, the recourse of prison personnel is to communicate the situation to others via radio. Appellant was cognizant of this procedure and endeavored to prevent Menegay from using his radio.
Despite appellant's efforts, Menegay was able to signal his distress by quickly hitting the "man-down" button and then turning off his radio so appellant would not overhear the radioed response of Menegay's co-workers. Fortunately, Tom Smith, a corrections officer on duty at the time, received Menegay's call and responded. Smith entered the cell and was able to distract appellant long enough to remove the mop-wringer from his control. This enabled Menegay to finally exit the cell after being cornered for approximately thirty minutes. Menegay was described as visibly shaken by the ordeal. In fact, Menegay later testified that he feared for his life while cornered in the cell.
The third event pertinent to this appeal occurred on June 27, 1998. Appellant put his own excrement on a dinner plate, spread it on the walls of his cell, and then threw the filth-coated dish through the cell pan-hole and onto the floor of the prison hallway. As appellant had previously tested positive for hepatitis, and because his cell was also used for medical purposes, SORJ administrators made arrangements for the professional cleaning and sanitization of the affected areas. BBU and BFI, companies specializing in biohazardous clean-up and disposal, respectively, billed the prison a total of $1,440.51 for their combined work.
Fourth, and finally, on October 17, 1998, appellant set a pile of trash in his cell ablaze. A corrections officer, Jean Fox, happened to walk past appellant's cell on her way to use the restroom. As she passed, appellant beckoned her, requesting — as he had done on previous occasions — to be freed from his cell. Her initial response was to ignore him, but she sensed something unfamiliar in his voice. She peered through the window in the door of his cell and saw only blackness. She notified other on-duty corrections officers and, together, they opened the door of appellant's cell to discover a burning pile of trash in the corner of the room. It was the black smoke from the blazing garbage that prevented Fox from seeing anything but darkness through the window of appellant's cell. The fire damaged the mattress and walls of the room.
On February 12, 1999, the Athens County Grand Jury indicted appellant on four counts: (1) vandalism, a fifth-degree felony, for the destruction of the telephone;[1] (2) abduction, a third-degree felony, for preventing Officer Menegay from leaving appellant's cell;[2] (3) vandalism, a fifth-degree felony, for the spreading of appellant's feces throughout his cell;[3] and finally, (4) arson, a fourth-degree felony, for setting his cell aflame and damaging the walls of his cell.[4]
On March 24, 1999, appellant moved to have the trial court sever the abduction count from the remaining counts. A hearing was held on March 27, 1999, to hear the merits of this argument. On June 23, 1999, the court denied the motion. On June 29, 1999, a three-day trial began on the four counts of the indictment.
At trial, appellant offered a far different story regarding the abduction of Officer Menegay than the state presented. Appellant argued that [his] back had become sore while mopping his cell. As [he] sat resting, [Officer] Menegay came to pick up the mop, bucket, and supplies. * * * The only actions [he] took involving the mop-wringer was to grab it to empty the water from the bucket, after [Officer] Menegay entered the cell. He never intended to harm [Officer] Menegay, nor to hit the officer with anything, especially the mop-wringer.
As to Menegay's testimony that he feared for his life, appellant contends it was merely psychosomatic: Menegay was visibly shaken only because of his own contrived fear in reaction to appellant's imposing physical appearance.
Regarding the balance of the charges, appellant conceded to the facts as presented by appellee. However, he challenged the state's presentation of the consequences of some of his actions: he conceded that the scattering of his excrement caused damage, but damage tantamount to criminal damaging not vandalism; further, he maintained, he did not intentionally set the fire in his cell, rather he was merely reckless in the disposal of a cigarette.
At the conclusion of the trial, appellant moved the court to provide jury instructions for lesser included offenses for each of the four counts. Based on appellant's motion, the lower court held that there was not enough evidence regarding the destruction of the telephone for the state to proceed on a vandalism charge. However, the court held that the state could proceed on the lesser included offense of criminal-damaging, a second-degree misdemeanor.[5] Accordingly, the vandalism charge was reduced to criminal damaging.
Further, the lower court gave jury instructions on lesser included offenses for the remaining vandalism and arson counts. However, the court refused to give such a jury instruction for the lesser included offense of unlawful restraint with the abduction charge.[6]
Nevertheless, the jury found against appellant on all counts. On July 2, 1999, the trial court sentenced appellant. In doing so, the lower court considered appellant's criminal record: five previous felony convictions, three prison terms, and various offenses committed under previously ordered sanctions. The trial court sentenced appellant to an aggregate term of six-years and five-months imprisonment.
Appellant filed a timely appeal presenting four assignments of error for our review.
 I. TROY JONAS' CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT FAILED TO GIVE JURY INSTRUCTIONS FOR THE LESSER-INCLUDED OFFENSE OF UNLAWFUL RESTRAINT FOLLOWING ITS INSTRUCTIONS ON ABDUCTION.
 II. TROY JONAS' CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE STATE FORCED HIM TO DEFEND HIMSELF AT A SINGLE TRIAL FOR FOUR DISSIMILAR OFFENSES THAT OCCURRED ON FOUR DISTINCT, SEPARATE OCCASIONS.
 III. TROY JONAS' CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE IN SUPPORT OF EACH ELEMENT FOR A CONVICTION FOR VANDALISM IN COUNT 3. THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE OF SERIOUS PHYSICAL HARM TO ITS PROPERTY.
 IV. THE USE OF OHIO'S STATUTORY DEFINITION OF "REASONABLE DOUBT" IN MR. JONAS' TRIAL VIOLATED HIS RIGHT TO DUE PROCESS, AS THAT DEFINITION ALLOWS CONVICTIONS BASED ON A STANDARD OF PROOF LOWER THAN THAT REQUIRED BY THE UNITED STATES CONSTITUTION.
We overrule appellant's assignments of error and affirm the judgment of the trial court.
ANALYSIS
We address each of appellant's assignments of error seriatim.
 I.
Appellant argues in his First Assignment of Error that he was deprived of due process and a fair trial because the trial court failed to include a jury instruction for the lesser included offense of unlawful restraint following its abduction instruction.
A trial court is properly afforded broad discretion in a criminal trial when determining whether to include a jury instruction for a lesser included offense. The lower court should not be reversed absent a clear demonstration of an abuse of discretion that materially prejudiced appellant. See State v. Perry (Oct. 3, 1996), Cuyahoga App. No. 69892, unreported; Williams v. Oeder (1995), 103 Ohio App.3d 333, 659 N.E.2d 379. An abuse of discretion is more than an error of judgment, but rather a demonstrated "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621, 614 N.E.2d 748, 750. An appellate court may not substitute its judgment for that of the trial court when applying the abuse-of-discretion standard. See Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
The Supreme Court of Ohio, in State v. Kiddler (1987), 32 Ohio St.3d 279,513 N.E.2d 311, succinctly provided the framework for trial courts to determine whether a jury instruction for a lesser included offense should accompany an instruction on a charged offense.
 A criminal defendant is entitled to a lesser-included-offense instruction * * * only where the evidence warrants it. * * * Thus, the trial court's task is twofold: first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater.
Kiddler, 32 Ohio St.3d at 279, 280, 513 N.E.2d at 311, 312.
Accordingly, we begin with the first step, whether unlawful restraint constitutes a lesser included offense of abduction. The Kiddler Court provided an analysis, the statutory-elements test, to determine what constitutes a lesser included offense of a charged crime.
 An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot, as statutorily defined, ever be committed without the offense of the lesser degree, as statutorily defined, also being committed, and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
Kiddler, 32 Ohio St.3d at 279, 513 N.E.2d at 311, paragraph one of the syllabus. Appellee concedes in its brief to this Court that unlawful restraint is indeed a lesser included offense of abduction.
Thus, we turn to the second step of the general framework, whether the evidence warranted a jury instruction on the lesser included offense. Here too, the Kiddler Court provides insight.
 Even though [the first step of this analysis is met], a charge on the lesser included offense is not required, unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense.
Kiddler, 32 Ohio St.3d at 283, 513 N.E.2d at 316. Accordingly, our task is to resolve whether the trial court abused its discretion in determining that a jury could not have reasonably concluded that the evidence supported a conviction for the lesser offense and not the greater.
Abduction and unlawful restraint both require the knowing restraint of another's liberty. See R.C. 2905.03(A); cf. R.C. 2905.02(A)(2). However, abduction has the additional requirement that the restraint be made "[b]y force or threat." R.C. 2905.02(A)(2).
Appellant argues that he did not intentionally block the passage of Officer Menegay. Thus, to believe appellant, he would be guilty of neither the lesser offense nor the charged offense, as both require appellant to have knowingly restrained the liberty of another.
We find no evidence in the record that supports the middle ground: that appellant intentionally prevented Officer Menegay from leaving the cell, but did so without force or threat. This is the evidence necessary for an instruction on the lesser included offense of unlawful restraint to be included. In cases such as this, the Supreme Court of Ohio is clear.
 There is great potential for unreasonable compromises where the evidence adduced by a defendant constitutes a complete defense to the substantive elements of the crime charged. Because of this potential, this court * * * has held that where the evidence adduced on behalf of a defendant constitutes a complete defense to the substantive elements of the crime charged, an instruction on a lesser included offense should be given to the trier of fact only if, based on the evidence adduced on behalf of the state, the trier of fact can find for the defendant and against the state on some element of the greater offense which is not required to prove the commission of the lesser offense and for the state on the elements required to prove the commission of the lesser offense.
State v. Solomon (1981), 66 Ohio St.2d 214, 220, 421 N.E.2d 139, 143; cf. State v. Johnson (1988), 36 Ohio St.3d 224, 522 N.E.2d 1082 (holding "defendant is not entitled to a jury instruction on * * * a lesser included offense * * * where [he] denied participation in the alleged offense * * *"). The only evidence appellant proffered in support of his argument was that he injured his back and sat down, physically, butunintentionally, blocking Officer Menegay from leaving the cell.
Accordingly, the jury was presented only with evidence that appellant either did intend to restrain Officer Menegay's movement, and did so byforce or threat, or he did not intend at all to restrain Menegay's movement. We find no evidence in the record to support the requested lesser included offense of unlawful restraint. Accordingly, the lower court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of unlawful restraint as there was no evidence proffered to support its inclusion.
Appellant's First Assignment of Error is OVERRULED.
 II.
Appellant argues in his Second Assignment of Error that he was deprived of due process and a fair trial because he was forced to defend himself at a single trial for four dissimilar offenses that occurred on four different occasions.
In our reading of the relevant rules and caselaw, we find that, when evaluating whether there was misjoinder, a reviewing court must make three determinations: (1) whether there was waiver of the objection, that is, whether the motion for severance was renewed at the close of the state's case or at the conclusion of all of the evidence, see State v.Owens (1975), 51 Ohio App.2d 132, 366 N.E.2d 1367; (2) whether there is justification, under Crim.R. 8(A), for the offenses to be joined in the same trial; and (3) whether, pursuant to Crim.R. 14, appellant was prejudiced by the joinder. However, application of this framework in its entirety is not necessary in the case sub judice; this matter is disposed of by the first prong.
A misjoinder objection may be waived if it is not properly preserved in the record of the lower court. "A motion for severance due to prejudicial misjoinder under rules of procedure for relief from prejudicial misjoinder must be renewed at the close of the state's case or at theconclusion of all the evidence and unless made at that time, it is waived." (Emphasis added.) Owens, 51 Ohio App.2d at 132,366 N.E.2d at 1367, paragraph two of the syllabus. It is this first hurdle that appellant is unable to clear; he failed to renew his misjoinder objection at the close of the state's case or at the conclusion of all of the evidence. Accordingly, the objection was effectively waived by appellant and cannot now be properly presented to, addressed, or reviewed by this Court.
Appellant's Second Assignment of Error is OVERRULED.
 III.
Appellant argues in his Third Assignment of Error that he was deprived of due process and a fair trial because the state did not proffer sufficient evidence for a vandalism conviction for the spreading of feces throughout his cell.
Preliminarily, we note that appellee has mischaracterized appellant's assignment of error as a claim that his conviction is against themanifest weight of the evidence, while appellant's assignment of error involves the legal sufficiency of the evidence. It is important to distinguish between these two concepts and their attendant standards of review.
Sufficiency of the evidence involves considering whether the conclusions of law are buttressed by the findings of fact and, correspondingly, whether the findings of fact are supported by any
evidence. See Whiteside, Ohio Appellate Practice (2001 Ed.) 287-91; see, generally, State v. Green (1996), 117 Ohio App.3d 644, 691 N.E.2d 316. The result of a reviewing court finding insufficiency of evidence is acquittal. See State v. Overmyer (Nov. 6, 2000), Paulding App. No. 11-2000-07, unreported.
However, a claim that a finding is against the manifest weight of the evidence involves a determination of whether the findings of fact are supported by competent, credible evidence. See Whiteside, supra. The result of a reviewing court finding a decision to be against the manifest weight of the evidence is to reverse and remand the case for a new trial. See, generally, State v. Lindsey (2000), 87 Ohio St.3d 479, 483,721 N.E.2d 995, 1002 (restating the standard as, "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered").
In sum, insufficiency of evidence is a more rigorous standard and, if successfully challenged, results in the acquittal of appellant on that charge. Manifest weight of the evidence is a less rigorous standard and, if successfully challenged, results in a retrial of the matter.
Appellant's challenge is that the state did not provide sufficientevidence for a vandalism conviction. Accordingly, the relevant inquiry in the instant matter is "whether, `after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis sic.) State v. Johnson (2000), 88 Ohio St.3d 95, 112,723 N.E.2d 1054, 1080, quoting Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 2789.
The essential elements of the crime of vandalism are: (1) knowingly causing; (2) serious physical harm, at least a $500 loss to the value of the property; (3) to property that is owned, leased, or controlled by a governmental entity. See R.C. 2909.05(B)(2); R.C. 2909.05(F)(2).
The first and third elements are not in contention. It is only the second element — serious physical harm in the amount of $500 or more — that appellant is contesting. From our reading of appellant's brief, we discern two arguments made in support of appellant's allegation that the serious-physical-harm element was not proven: (1) that the cost of cleaning appellant's excrement was not actually harm to the property; and (2) that the fees charged by BBU and BFI were unreasonable. We will address these arguments in turn.
We find appellant's first argument to be without merit. If SORJ had left the excrement in the cell and on the floor of the hallway, there certainly would be a diminution in the value of the property. To restore the property to its original condition, the state was required to have the areas cleaned and sanitized. We see no difference, for example, in the cost of clean-up for graffiti on the walls of a public institution from the more egregious behavior involved in this matter.
Moreover, the 1974 Committee Comment to the bill that would later become R.C. 2909.05 indicates that this sort of damage is indeed contemplated by this section. "Examples of violations include breaking windows in a home, destroying furniture, or befouling a home withexcrement, so as to make it temporarily unusable or so as to require asubstantial amount of time, effort, or money to make good the damage." (Emphasis added.) R.C. 2909.05, Committee Comment to H.B. No. 511 (1974).
Further still, we consider R.C. 2901.01(A)(6)(a). Although R.C.2909.05(F)(2) is controlling for the purposes of R.C. Chapter 2909, we find the definition of serious physical harm provided in R.C.2901.01(A)(6)(a) — intended to apply to Title 29, generally
— to further bolster our conclusion that this type of damage is indeed contemplated by R.C. 2909.05(B)(2). R.C. 2901.01(A)(6)(a) defines serious physical harm to property as "any physical harm * * * that * * * [r]esults in substantial loss to the value of the property, or requires asubstantial amount of time, effort, or money to repair or replace * * *." (Emphasis added.) R.C. 2901.01(A)(6)(a). However, we again emphasize that R.C. 2901.01(A)(6)(a) is merely persuasive in light of the more specific definition, R.C. 2909.05(F)(2), provided in R.C. Chapter 2909.
We next address appellant's second argument, that the fees charged by BBU and BFI were unreasonable. Because appellant had previously tested positive for hepatitis, and because his cell was also used for medical purposes, the SORJ administration made arrangements for the professional cleaning and sanitization of the areas affected by appellant's excrement. BBU and BFI, companies specializing in biohazardous clean-up and disposal, respectively, billed the prison a total of $1,440.51 to clean and sanitize the areas affected by appellant's conduct.
As we stated earlier, sufficiency of the evidence involves considering whether the conclusions of law are supported by the findings of fact and whether the findings of fact are supported by any evidence. To find appellant guilty under R.C. 2909.05(B)(2), it must be shown that there was damage done in an amount exceeding $500. Thus, the finding of fact that the fees paid to BBU and BFI, totaling more than double the statutory minimum, certainly buttresses the conclusion of law that appellant was guilty of vandalism. Accordingly, we are left to determine whether this finding of fact is supported by any evidence.
As appellant thoroughly presented in his brief to this Court, witnesses testified on behalf of the state as well as appellant regarding the reasonable clean-up costs of appellant's excrement. Thus, our inquiry is complete; there was evidence proffered to support the finding of fact that $1,440.51 was a reasonable fee for removing appellant's feces. It is not this Court's role, in the context of a sufficency-of-evidence challenge, to determine which party's evidence was more convincing; that determination is to be left to the jury.
Appellant's Third Assignment of Error is OVERRULED.
 IV.
Appellant argues in his Fourth Assignment of Error that he was deprived of his right to due process of law by the use of Ohio's statutory definition of "reasonable doubt," which, he alleges, permits convictions based on a standard of proof less than that required by the federal constitution.
There is simply nothing in the record demonstrating that appellant preserved this error for review. Accordingly, appellant has waived this alleged error on appeal. See, e.g., State v. Ross (Oct. 12, 2000), Cuyahoga App. No. 77126, unreported (stating, "[i]n this case, the record demonstrates that no objection was raised to the trial court's phraseology and, as such, any claimed error is waived on appeal"); accordGibson v. Meadow Gold Dairy (2000), 88 Ohio St.3d 201, 724 N.E.2d 787. Further, App.R. 12(2) states that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." App.R. 12(2).
Nevertheless, we note that we squarely addressed this same argument inState v. Wolfe (June 17, 1996) Gallia App. No. 95CA04, unreported.
The argument made by appellant in his final assignment of error is that the trial court improperly instructed the jury on the concept of "reasonable doubt." He concedes that the instructions used by the court follow the state's statutory definition of "reasonable doubt" as embodied in R.C. 2901.05(D). However, appellant contends that this statutory definition sets forth a standard of proof which is constitutionally inadequate. We disagree. The Ohio Supreme Court has considered a number of similar challenges * * * and [has] repeatedly found that the definition of reasonable doubt contained therein is constitutional. * * * It is axiomatic that we are bound by decisions of the Ohio Supreme Court * * * and that we may not disregard its clear and unambiguous directive. * * * The fourth assignment of error is thus without merit and is accordingly overruled.
Id. (Citations omitted.); see, e.g., State v. Wilson (1996),74 Ohio St.3d 381, 659 N.E.2d 292. We again reiterate, as we explained in no uncertain terms in Wolfe, that this Court is bound by the clear mandate of the Supreme Court of Ohio: Ohio's statutory definition of reasonable doubt is constitutional.
Appellant's Fourth Assignment of Error is OVERRULED.
CONCLUSION
Appellant alleges in his First Assignment of Error that he was deprived of due process and a fair trial because the trial court failed to include a jury instruction for the lesser included offense of unlawful restraint following its abduction instruction. We find no abuse of discretion by the trial court in not charging the jury with an instruction on the lesser included offense of unlawful restraint as there was no evidence proffered to support its inclusion.
Appellant claims, in his Second Assignment of Error, that he was deprived of due process and a fair trial because he was forced to defend himself at a single trial for four dissimilar offenses that occurred on four separate occasions. We find appellant failed to renew his misjoinder objection either at the close of the state's case or at the conclusion of all of the evidence. Accordingly, the objection was effectively waived by appellant and cannot now be addressed by this Court.
In appellant's Third Assignment of Error he asserts he was deprived of due process and a fair trial because the state did not proffer sufficient evidence for a vandalism conviction for the spreading of feces throughout his cell and the prison hallway. First, we find contaminated fecal clean-up costs to be the very sort of damage contemplated by the vandalism statute. Second, we find sufficient evidence to support the finding of fact that $1,440.51 was a reasonable fee for removing appellant's excrement.
Appellant argues, in his Fourth Assignment of Error, that his due-process rights were violated by the use of Ohio's statutory definition of "reasonable doubt," which, he alleges, permits convictions based on a standard of proof less than that required by the federal constitution. We find nothing in the record demonstrating that appellant preserved this error for review; thus, appellant has waived this alleged error on appeal. Even assuming arguendo that he did preserve the objection, we squarely addressed this same argument in Wolf: we are bound by the clear mandate of the Supreme Court of Ohio, which is that Ohio's statutory definition of reasonable doubt is constitutional.
Therefore, appellant's assignments of error are OVERRULED, and the judgment of the Athens County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Abele, P.J., and Harsha, J. Concur in Judgment and Opinion on Assignments of Error I, III, and IV; Concur in Judgment Only on Assignment of Error II.
[1] "No person shall knowingly cause serious physical harm to property that is owned, leased, or controlled by a governmental entity." R.C.2909.05(B)(2). Further, R.C. Chapter 2909.05 explains that "`[s]erious physical harm' means physical harm to property that results in loss to the value of the property of five hundred dollars or more." (Emphasis added.) R.C. 2909.05(F)(2). As will be explained in the body of this opinioninfra, this charge was later reduced to criminal damaging. See infra note 5.
[2] "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear." R.C. 2905.02(A)(2).
[3] See supra note 1.
[4] "No person, by means of fire or explosion, shall knowingly * * * [c]ause, or create a substantial risk of, physical harm to * * * [a] building or structure that is owned or controlled by the state * * *, and that is used for public purposes * * *." R.C. 2909.03(A)(3).
[5] "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [k]nowingly, by any means * * *." R.C. 2909.06(A)(1).
[6] The statutory definition of unlawful restraint is found in R.C.2905.03(A); it reads as follows. "No person, without privilege to do so, shall knowingly restrain another of his liberty." R.C. 2905.03(A). Unlawful restraint is a third-degree misdemeanor.