JOURNAL ENTRY AND OPINION
This is an appeal from the jury verdict, following trial before Judge Bridget M. McCafferty, that convicted appellant Winston McDonald for robbery and assault on a police officer arising out of his shoplifting several bottles of Tylenol. He does not contest his guilt on the crime of assault but claims it was error to fail to instruct the jury on the lesser included offense of theft. We agree, reverse in part, and remand.
On April 1, 2000, McDonald entered the Tops Supermarket at East 115th Street and Buckeye Road, concealed in his clothing, several bottles of Tylenol, collectively valued at $42.60, and proceeded to the check-out line where he paid for only a can of shaving cream. Tops Security Officer Harriet Sykes saw him conceal the Tylenol and followed him to the check-out line, where she told Cleveland Police Officer Kathleen Bowman that McDonald was a shoplifter who should be stopped for questioning. Officer Bowman worked part-time for a contractor providing uniformed security services to Tops and was stationed at the exit of the store.
Bowman and Sykes confronted McDonald before he left the store and, although he denied taking any items without paying for them, he agreed to accompany them to the security office on an upper floor at the back of the store. As he was led to the rear of the store, bottles of Tylenol began to drop from his clothing onto the floor, and eight were recovered. Once upstairs in the security office, Sykes followed the store policy and procedure and began to fill out a Tops security form. She was to describe the incident, obtain information from the offender, who was to provide identification and acknowledge his crime, and then release the offender with a warning to never return to the store.[1] If the shoplifter could not provide credible identification, the Cleveland Police would be contacted and the offender would be transported to the District Station for the purpose of ascertaining his identity and then be released with no further prosecution. Sykes and Bowman obtained all the information required by the security form from McDonald but he claimed he did not have any verifiable identification on his person and, apparently, refused to sign the form.
At some point, McDonald realized that he was not going to be released from the store but was to be taken away by police in a zone car. After Bowman left the security office, McDonald was alone with Sykes, he stood up, began to rant about how crazy he was, and tried to grab and destroy the paperwork. Sykes struggled with him to recover the documents while McDonald attempted to leave the office. Bowman and Brian F. Klenotic, a store manager, heard the commotion and unsuccessfully attempted to subdue McDonald. Bowman then decided to place him under formal arrest, told McDonald he was under arrest and ordered him to put one of his hands behind his back so that she could handcuff him. He began to flail his arms backwards and struck her one time with his elbow causing, a black eye. Once handcuffed, he continued to scream and curse but offered no further resistence, and was taken away by the police.
McDonald was indicted for one count of robbery in violation of R.C.2911.02, a felony of the second degree, and one count of assault with a peace officer[2] specification in violation of R.C. 2903.13(C)(3), a felony of the fourth degree. McDonald underwent a psychiatric evaluation and was found competent to stand trial.
At trial Sykes testified that between thirty to forty-five minutes passed from the time she and Bowman confronted McDonald at the store's exit until he became upset and tried to leave the security area and struck Bowman. Bowman claimed the time frame was about fifteen minutes, and Klenotic contended that at most twenty minutes had passed. McDonald's lawyer moved for acquittal at the close of the State's case and, when that was denied, moved for an instruction on the lesser included offenses of petty theft and misdemeanor assault, which was also denied. Prior to jury deliberations, he preserved his objection to the denial of the instruction.
The jury returned guilty verdicts to both counts and, when the judge immediately proceeded to the sentencing, McDonald became agitated and was profanely derisive toward her. He was sentenced to six years imprisonment for count one, seventeen months on count two, to run concurrently, and ordered to first serve thirty days in jail and pay a $250 fine for contempt of court for his disrespectful behavior.
He now raises four assignments of error only in connection with his conviction for robbery:[3]
 I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S REQUEST THAT THE JURY BE INSTRUCTED ON THE LESSER INCLUDED OFFENSE OF THEFT.
McDonald contends that the time lapse between his apprehension for the theft of the Tylenol and his actual attempt to flee and subsequent assault was sufficient evidence for a jury to find that his escape did not occur immediately after his theft, and his offense was not robbery but only theft. He asserts that the time it took to process him in the security office separated his acts, and that his theft and attempted escape and the assault were not the continuous sequence of events necessary to sustain a conviction for robbery. He claims the jury should have been given an instruction that if the State failed to prove all the essential elements of the crime of robbery it should determine whether it proved all the essential elements of the lesser included offense of theft. The State counters that nothing intervened in the continuous chain of circumstances that led to his arrest and the instruction was unnecessary.
Robbery is defined as follows:
 No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (3) Use or threaten the immediate use of force against another [emphasis added].[4]
Theft is relevantly defined as follows:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in either of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
* * *
(3) by deception;
* * *.[5]
McDonald submits that his theft of $42.60 in Tylenol would have qualified his offense as petty theft, a misdemeanor of the first degree.[6] Since robbery is, as alleged here, a theft with the infliction of physical harm or use of force in fleeing immediately after its commission, and is a felony of the second degree, the offense of theft itself is undoubtably a lesser included offense.
While a judge has no duty to include a jury instruction on any conceivable lesser included offense of more serious crime,[7] a judge must charge on a lesser included offense "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."[8] Failure to give such instruction under such circumstances amounts to prejudicial, reversible error because, [i]f an instruction is not given when warranted by the evidence, a jury may convict the defendant of the greater charged offense, even though not convinced of guilt beyond a reasonable doubt, simply because the evidence shows he was obviously guilty of some offense.[9]
`Immediately' is typically defined as follows: (1) without lapse of time; without delay; instantly; at once; (2) without intervening medium or agent; concerning or affecting directly; (3) with no object or space intervening. * * * However, immediately is not a word capable of a hard and fast definition to every applicable situation. Whether the action is immediate depends upon the circumstances of the case.[10] At the same time, immediately does not mean that all elements of a crime must occur concurrently or simultaneously in order for a crime to have been completed.[11] Rather, it is sufficient to establish that the separate acts forming the elements of a crime constitute a single continuous transaction.[12] At a trial for robbery, whether the use of force occurs "immediately" after a theft offense is a question for the trier of fact.[13]
In the case, sub judice, the evidence established that a theft had occurred based upon Sykes' testimony that she saw McDonald conceal merchandise, fail to pay for it, and attempt to exit the store. Bowman testified that, as she escorted McDonald to the security room, she had to periodically stop and pick up bottles of Tylenol he was surreptitiously dropping from his clothing. Therefore, there is no question that the evidence presented would justify conviction for the lesser included offense of theft, for which McDonald requested a jury instruction.
Whether, in the absence of a lesser included charge, the evidence would support a reasonable jury's acquittal of the robbery charge, however, is a much more fact-oriented question. Cases such as State v. Dunning, State v. Costa and State v. Wright, supra, in which an offender attempted flight immediately upon confrontation by store personnel, confirm that an attempt to get away with purloined goods after detection, and an assault on pursuers in the process, provides ample, irrefutable evidence of robbery and no need for any lesser included offense charge. In State v. Pringle, supra, the offender committed a theft of compact discs, was caught, and did not attempt to flee until placed under arrest. The court held that his theft and flight were related because when he fled, the offender still had some stolen merchandise on his person.[14]
Other cases hold that, where an offender attempts to commit a theft offense, is thwarted, flees and, upon realizing that his conduct will result in arrest or criminal prosecution, commits an assault, a jury may reasonably convict the offender of robbery. In State v. Foster,[15] the offender was apprehended by store security and his theft was prevented. The officer subsequently escorted him to the store's security area where, upon learning that he had no identification, the officer informed him that the police would be called. The offender then brandished a pistol, pointed it at the officer and escaped. In State v. Dixon,[16]
the business declined to cash an offender's forged check with false identification because it had a record of a previous attempt by someone to negotiate bad checks under the same assumed name. After several minutes, the business's manager informed the offender that the police were going to be called, the offender tried to retrieve his false I.D. and fled but, after a struggle, was detained by employees. The court held that his offense constituted a robbery and that he inflicted force in trying to flee immediately after attempting his theft because he did not try to escape until he realized he was caught and the police were going to be called.
Against this authority stands State v. Thornton,[17] in which store security observed an offender committing a theft offense and detained him in the store's security office. An hour later, the offender attempted to escape the office by wielding a paint scraper, and was later charged with robbery in attempting to commit theft and then threatening the use of force to obtain freedom.[18] The court held that, because the offender's * * * detention had been stabilized for some time * * * after the theft itself, an essential element of immediacy after the theft had not been established, and the robbery conviction was reversed.[19]
We hold that, under the specific facts of this case, the judge was required to instruct the jury as to the lesser offense of theft. Because he was going to be transported to the police station, McDonald attempted to flee the security office and he attempted to destroy or take with him the evidence of his identity, the jury may have had reasonable cause to convict him of robbery. The evidence showed a theft, the internal handling of the theft by security personnel, McDonald's outburst, and then the presence of on-duty police officers to escort him to the police station.
However, the evidence, viewed in a light most favorable to McDonald, could also have indicated that there was a break in the sequence of events comprising the elements of robbery that disengaged the theft from the assault of Bowman. At trial, McDonald argued that a time lapse of up to forty minutes between the two events bifurcated the phases of his crimes, and he could not be guilty of robbery. It appears the jury rejected that argument but may have been impermissibly coerced into convicting him of robbery because he had obviously committed a theft. Without a guilty verdict on the robbery charge, McDonald would have avoided all punishment for the theft-oriented charge in the indictment. While acquittal admittedly may not have been appropriate, the jury had no legitimate alternative but a finding of guilty of robbery.
During oral argument, the State asserted that charging and instructing only on the highest possible offense, when conviction on lesser included offenses are more viable, is justified in light of a defendant's opportunity for a complete acquittal. This all-or-nothing approach does not necessarily inure to the benefit of a defendant because of the risk that a jury will feel compelled to find him guilty of its only option, the higher offense, inasmuch as the facts prove he did something criminal and must be held accountable. However, because a jury could have — but was not required to — reasonably acquit McDonald of robbery and find him guilty of the lesser-included offense of petty theft, his first assignment of error is well taken.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29, OHIO RULES OF CRIMINAL PROCEDURE, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSES CHARGED BEYOND A REASONABLE DOUBT.
 III. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT FOR THE OFFENSE OF ROBBERY.
Whether the evidence is legally sufficient to sustain a verdict is a question of law.[20] According to Crim.R. 29:
 The court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction on such offense or offenses. * * *
Whether phrased in terms of a Crim.R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[21] As stated, supra, there was evidence tending to show that McDonald stole Tylenol, was caught, and detained for a period of time in relation to the theft[22] and, in an attempt to free himself from the custody of store security, McDonald flailed his arms and struck Bowman, pushed Klenotic out of his way, and struggled with Sykes over the report forms containing his identity. A rational juror, viewing the evidence in a light most favorable to the State, could have found each element proven beyond a reasonable doubt. The second and third assignments of error are overruled.
 IV. THE JURY'S VERDICT OF GUILTY ON THE CHARGE OF ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In evaluating a challenge to the verdict based on the manifest weight of the evidence presented at trial, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has lost its way.[23] This power is subject to strict and narrow constraints:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.
 It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." * * *
 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").[24]
Based on our above disposition of McDonald's previous assignments of error, and mindful of the extremely limited scope of any manifest weight inquiry, we conclude that the jury may have kept its way on the evidence presented. The fourth assignment of error is overruled.
Judgment reversed in part and remanded.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM. J., CONCUR; JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION.
[1] The form provides for the shoplifter to acknowledge his theft and release Tops from liability for claims arising out of the incident. It appears McDonald refused to sign the form.
[2] Peace officer is defined in R.C. 2903.13(C)(4)(a), through R.C.2935.01, as a member of the organized police department of any municipal corporation.
[3] McDonald does not appeal from his conviction under count two of the indictment, assault with a peace officer specification.
[4] R.C. 2911.02(A), emphasis added.
[5] R.C. 2913.02(A).
[6] See R.C. 2913.02(B)(2).
[7] State v. Davis (1983), 6 Ohio St.3d 91, 95, 451 N.E.2d 772, 775; State v. Ranzy (Aug. 5, 1993), Cuyahoga App. No. 63472, unreported.
[8] State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. See, also, State v. Kidder (1987),32 Ohio St.3d 279, 513 N.E.2d 311.
[9] State v. Kidder, supra, at 281, 513 N.E.2d at 315 (internal cites omitted).
[10] State v. Thompson (May 12, 1977), Franklin App. No. 77AP-53, unreported.
[11] State v. Meisenhelder (Oct. 12, 2000), Cuyahoga App. No. 76764, unreported.
[12] Meisenhelder, supra; State v. Dunning (Mar. 23, 2000), Cuyahoga App. No. 75869, unreported.
[13] State v. Costa (Dec. 31, 1998), Greene App. No. 98-CA-32, unreported; State v. Wright (Feb. 3, 1997), Clermont App. No. CA96-02-022, unreported.
[14] Id.
[15] (Sept. 25, 1998), Trumbull App. No. 97-T-0094, unreported.
[16] (Jun. 20, 1990), Miami App. No. 89-CA-22, unreported.
[17] (May 12, 1977), Franklin App. No. 77AP-53, unreported.
[18] Id.
[19] Id.
[20] State v. Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388,124 N.E.2d 148.
[21] See State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[22] Viewed in a light most favorable to the prosecution, this time period did not exceed twenty minutes. See Statement of Facts, supra.
[23] See State v. Thompkins, supra.
[24] State v. Thompkins, supra at 387, 678 N.E.2d 541, * * * (internal cites omitted).