**State v. Morris**
*[Cite as 8 AOA 244]*

*Case No. CA-8088*
*Stark County, (5th)*
*Decided November 26, 1990*

*Robert D. Horowitz, Prosecuting Attorney, Ronald Mark Caldwell, Ass't Prosecuting Attorney, P.O. Box 20049, Canton, Ohio 44701, for Plaintiff-Appellee.*

*Ronald C. Pleis, 1307 Market Avenue North, Canton, Ohio 44714, for Defendant-Appellant.*

PUTMAN, P.J.

This is an appeal from a judgment of conviction and sentence entered upon a jury verdict of guilty of involuntary manslaughter with a gun specification, a violation of R.C. 2903.04.

Defendant-appellant, Willie Preston Morris, Jr., (appellant) assigns the following as error:

"ASSIGNMENT OF ERROR NO. I
"THE TRIAL COURT ERRED BY REFUS-
ING TO INSTRUCT THE JURY ON THE
LESSER INCLUDED OFFENSE OF NEG-
LIGENT HOMICIDE, R.C. 2903.05.

"ASSIGNMENT OF ERROR NO. II
"THE TRIAL COURT ERRED AND
ABUSED ITS DISCRETION BY FAILING
TO GRANT A MOTION FOR NEW TRIAL,
MADE PURSUANT TO CRIMINAL RULE
33, BASED ON JUROR MISCONDUCT
AND IRREGULARITIES IN DELIBER-
ATIONS."

For the reasons stated below, appellant's first assignment of error is overruled and his second assignment of error is sustained.

On April 4, 1989, Jerry Card entered the Stage Door Lounge, a tavern located at 236 Market Avenue North, Canton, Ohio. Appellant was the manager of the Stage Door.

Card sat down at the bar and ordered a beer. Shortly after 9:00 p.m., appellant entered and sat down next to Card. The two men had known each other for about forty years. They proceeded to engage in friendly conversation that was periodically punctuated with loud or argumentative talk.

At one point during their conversation, Card leaned over to talk to appellant. Appellant testified at trial that when Card leaned over, Card pulled a butterfly knife and said, "I got this for punks." T.(V) 647. Appellant's chair collapsed from the weight of Card leaning on appellant. Appellant then got another chair, resumed his conversation with Card, and the two men continued to drink.

The conversation between the two men periodically became loud. At one point, both men stood up and Card grabbed appellant in a bear hug around appellant's shoulders. Appellant pushed Card away. Card lost his balance and then stumbled forward toward appellant. Appellant testified that he thought he "saw a flash" and when Card kept coming at him, appellant pulled a gun from his waistband and fired one shot at Card's lower abdomen.

Card then folded his arms and walked out of the bar. He was later found on an outside ledge in front of the Credit Bureau Building on North Third Street. Card was taken to the hospital and died later that night from extensive bleeding caused by the bullet wound.

Appellant was arrested, indicted, and tried for involuntary manslaughter. Counsel for appellant requested an instruction on the lesser included offense of negligent homicide. The trial court refused to give the jury this instruction. The jury returned a verdict of guilty as charged and the trial court entered a judgment of conviction and sentence.

Appellant timely moved for a new trial pursuant to Crim. R. 33. The matter came on for oral hearing before the trial court, and appellant presented evidence of alleged juror misconduct and irregularities during deliberations. After hearing this evidence, the trial court overruled appellant's motion for a new trial.

We turn now to appellant's assignments of error.

## I

Appellant argues by his first assignment of error that the trial court erred in failing to instruct the jury on the lesser included offense of negligent homicide.

The Ohio Supreme Court has set forth a three-part test to determine when an offense may be a lesser included offense of another offense:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *(State v. Kidder* [1987] 32 Ohio St. 3d 279, 513 N.E.2d 311, modified.)

*State v. Deem* (1988), 40 Ohio St. 3d 205, 533 N.E.2d 294, paragraph three of the syllabus.

Additionally, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. *State v. Thomas* (1988), 40 Ohio St. 3d 213, paragraph two of the syllabus.

The two offenses at issue are involuntary manslaughter and negligent homicide. R. C. 2903.04 defining involuntary manslaughter provides:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

R.C. 2903.05(A) defining negligent homicide provides:

"No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code."

Applying the *Deem* test to the offenses in this case, we conclude that the second prong is not met. Negligent homicide is not a lesser included offense of involuntary manslaughter because one can cause the death of another as a proximate result of committing a felony or misdemeanor by means other than a deadly weapon or dangerous ordnance. The use of a deadly weapon or dangerous ordnance is not an element of involuntary manslaughter. Thus, it is possible for one to commit involuntary manslaughter without committing negligent homicide. See *State v. Tyler* (1990), 50 Ohio St. 3d 24, where the Ohio Supreme Court applied the same reasoning in holding that negligent homicide is not a lesser included offense of aggravated murder.

Additionally, there is no reasonable view of the evidence on which the jury could have found appellant guilty of negligently causing Card's death by means of a deadly weapon. Appellant admitted to shooting Card intentionally in self-defense. There is no evidence in the record on appeal that appellant's gun was fired accidentally, or that appellant did not intend to shoot Card. The evidence, construed most favorably to appellant, was that appellant shot Card in self-defense to prevent Card from harming him.

Accordingly, the trial court did not err in refusing to give the requested instruction on negligent homicide and appellant's first assignment of error is overruled.

## II

By his second assignment of error, appellant argues that the trial court abused its discretion in not granting his motion for a new trial. Appellant's motion was based on alleged juror misconduct. Specifically, appellant argued that Juror No. 85 knew three of the witnesses who testified at trial on behalf of the State and did not reveal this knowledge when asked during *voir dire.* Appellant also alleged that Juror No. 85 communicated with certain witnesses and members of Jerry Card's family.

Appellant's new trial motion was also based on alleged irregularities in the jury deliberations, specifically the selection of a different foreman during deliberations, and Juror No. 85's failure to reveal to the trial court or trial counsel that she had a dental appointment scheduled for the week of trial and the appointment may have pressured her verdict.

A trial court's ruling on a new trial motion should not be disturbed on appeal unless the trial court abused its discretion. *City of Toledo v. Stuart* (1983), 11 Ohio App.3d 292. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St. 2d 151, 157.

After careful consideration of the record in this case, we conclude that it was an abuse of discretion for the trial court not to grant appellant's motion for a new trial. Juror No. 85 testified at the hearing on appellant's motion for a new trial that she knew Jessie Pitts, Doris Harmon, and Joseph Card, witnesses called by the State at trial. When the trial court read to the jury during *voir dire* a list of prospective witnesses and asked if any of the prospective jurors knew any of these witnesses, none of the jurors responded. However, at the hearing on appellant's motion for a new trial, Juror No. 85 testified that she recognized State's witnesses Jesse Pitts, Doris Harmon, and Joseph Card upon seeing them when they took the stand to testify at trial.

Regarding State's witness Jesse Pitts, Juror No. 85 testified that she recognized witness Pitts as someone she knew when she used to go out but had not had contact with him for several years. Juror No. 85 testified that she had had previous conversations with witness Pitts wherein he would buy her drinks and ask her out to dinner. Likewise, witness Pitts testified that he recognized Juror No. 85 from seeing her out in clubs and at her job in City Hall.

Regarding State's witness Doris Harmon, Juror No. 85 testified that she had been introduced to Harmon by other people and that she would see Harmon around at various bars and they would sometimes have a drink together while out with their mutual friends. Although the two women never formed a close relationship, they would exchange friendly "hello's." In fact, witness Harmon testified that she recognized Juror No. 85 in the hall before trial and they said hello to each other. Witness Harmon also testified that she had known Juror No. 85 since high school although they were not formally introduced to each other until after high school.

Juror No. 85 testified that she told the court bailiff that she knew witness Harmon, and the bailiff responded by indicating that if she did not know witness Harmon very well, there was no need for concern. Based on this response, Juror No. 85 testified that she felt it was unnecessary to inform the court or counsel about her recognition of the other State's witnesses.

The court bailiff testified that he does not recall Juror No. 85 informing him that she recognized any of the State's witnesses. The court bailiff never testified that Juror No. 85 did *not* in fact approach him regarding her knowledge of witnesses, but merely that he did not recall such an event.

Regarding State's witness Joseph Card, brother of the victim, Juror No. 85 testified that she had never had a conversation with

Joseph Card, but had seen him before and recognized him as having seen him around.

Due process requires that a person accused of a crime shall be tried before a panel of fair and impartial jurors. *Duncan v. Louisiana* (1968), 391 U.S. 145; *Sheppard v. Maxwell* (1966), 384 U.S. 333; *State v. King* (1983), 10 Ohio App. 3d 161, 165. In *Petro v. Donner* (1940), 137 Ohio St. 168, paragraph two of the syllabus, the Ohio Supreme Court stated:

"Where, on *voir dire* examination, the undisclosed or denied facts are such as are indicative of a mind which it is reasonable to believe is biased or prejudiced, *or such as would disqualify the prospective juror in the first instance,* the granting of a new trial under such circumstances is not an abuse of discretion." (Emphasis added).

Juror No. 85's answers on *voir dire* regarding recognition of the prospective witnesses were honest, but erroneous, and thus the true facts were undisclosed, impairing counsel for appellant's ability to effectively use his peremptory challenges to disqualify Juror No. 85 in the first instance.

Furthermore, the trial court found that the testimony of the witnesses that Juror No. 85 recognized was not critical and not adverse to appellant's case. We disagree. These were State's witnesses and thus their testimony was in some way inherently adverse to appellant and the fact is that Juror No. 85 had had previous contact with these witnesses, however slight.

Finally our review of the record indicates that when Juror No. 85 was asked whether her recognition of these witnesses influenced her ability to remain fair and impartial she answered "no." However, it is not whether the juror actually believed herself to be unaffected, but it is the *possibility* that she might have unknowingly been influenced by her recognition of these State's witnesses. Juror No. 85's self-serving declaration that she was not influenced cannot weigh in the balance. The potential for destruction of public confidence in the integrity of the judicial proceeding requires that judgments so potentially tainted not be allowed to stand. In situations such as this, the potential for prejudice is so "inherently indeterminate" that as a matter of law the error cannot reasonably be found to be harmless, independent of the actual fact as to whether the juror can consciously recognize whether or not she was influenced. See *Chapman v. California* (1967), 386 U.S. 18, 52, footnote 7.

Because we find Juror No. 85's contact with these witnesses sufficiently prejudicial, we do not address the alleged irregularities in the jury deliberations.

Accordingly, appellant's second assignment of error is sustained.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed and this cause is remanded to that court for a new trial.

SMART, J., and GWIN, J., concur.