[Cite as *State v. Coker*, 2014-Ohio-1210.]

STATE OF OHIO         )                 IN THE COURT OF APPEALS
                              )ss:               NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                       C.A. No.     26862

     Appellee

     v.                              APPEAL FROM JUDGMENT
                                    ENTERED IN THE
MARCUS A. COKER              COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
     Appellant                 CASE No.     CR 12 11 3133

DECISION AND JOURNAL ENTRY

Dated: March 26, 2014

CARR, Presiding Judge.

{¶1}    Appellant Marcus A. Coker appeals his conviction in the Summit County Court of Common Pleas. This court reverses and remands.

I.

{¶2}    Coker arrived unexpectedly at Shawna Bailey's apartment early in the morning on November 4, 2012. Although there is disagreement as to how he entered the apartment and what exactly transpired once he was inside, there is no disagreement that an altercation ensued and that Coker took a Nintendo Wii game system. As a result, in February 2013, Coker was indicted on one count of aggravated burglary with a repeat violent offender specification, one count of robbery with a repeat violent offender specification, and two counts of misdemeanor assault. After a jury trial, he was found not guilty on the count of aggravated burglary but guilty on the count of robbery with the repeat violent offender specification and both counts of assault. The trial court sentenced Coker to seven years imprisonment for robbery and six months for each

count of assault, to be served concurrently. Coker filed an appeal in which he raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE APPELLANT'S REQUESTED JURY INSTRUCTION ON THEFT AS A LESSER INCLUDED OFFENSE TO ROBBERY.

**{¶3}** Coker argues that the trial court erred by failing to instruct the jury on theft as a lesser included offense of robbery. This court agrees.

**{¶4}** The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. The first tier is a purely legal question that determines whether one offense is a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987).

**{¶5}** The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant. *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6.

**{¶6}** Both parties are in agreement on the first tier of the analysis as the Supreme Court of Ohio has held that the offense of theft, as defined in R.C. 2913.02, is a lesser included offense of robbery. *State v. Smith*, 117 Ohio St.3d 447, 2008-Ohio-1260, ¶ 29.

**{¶7}** Applying the second tier of the analysis requires looking to the evidence in this case. "If the evidence is such that a jury could reasonably find the defendant not guilty of the

charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser offense." *Mosely* at ¶ 11, citing *State v. Shane*, 63 Ohio St.3d 630, 632–633 (1992). As applied in this case, a judge should give a jury instruction on a lesser included offense of theft if the evidence is such that the jury could reasonably find the defendant not guilty of the charged offense of robbery, but could convict the defendant of the lesser included offense of theft.

{¶8} The State presented evidence that Coker entered the victim's residence forcefully, had altercations with Shawna Bailey and Devin Hubbard, and stole a Nintendo Wii game system. According to the State, Coker visited Ms. Bailey's apartment and knocked on the door at approximately seven in the morning on November 4, 2012. When Ms. Bailey opened the door, a man, who was later identified by Ms. Bailey as Coker, indicated to her that he wanted to come inside the apartment, charge his phone, and roll a blunt. Before Ms. Bailey responded, Coker punched her in the face causing her to stumble backward into the apartment. When she stumbled backward, Coker entered the apartment without Ms. Bailey's permission.

{¶9} Upon entering the apartment Coker continued to hit Ms. Bailey and placed her in a headlock. Her screams woke Mr. Hubbard who was sleeping on the couch in Ms. Bailey's small apartment. Mr. Hubbard stood up and asked, "What's going on?" Coker let Ms. Bailey go and immediately Ms. Bailey fled to her bedroom. As Ms. Bailey ran to her bedroom, she saw Coker punch Mr. Hubbard in the face. Ms. Bailey searched for her phone in her bedroom. After an unsuccessful search for the phone in her bedroom, she realized the living room was quiet. She reentered the living room and found her one-year-old son with her phone. By this time, Mr. Hubbard and Coker were gone, and the game system was missing. Ms. Bailey then called 911.

{¶10} Mr. Hubbard's testimony details the events that occurred after he woke up and while Ms. Bailey was not present in the living room. Mr. Hubbard testified that he was sleeping on Ms. Bailey's couch, and Ms. Bailey's scream woke him. After he awoke he saw Ms. Bailey and a man in the apartment, but he could not recognize the man because it was too dark in the apartment. Mr. Hubbard then pulled back the living room blinds to let some light into the room. The extra light enabled him to see the man's face and identify the man as Coker. Coker pressed Mr. Hubbard for money, and Mr. Hubbard responded that he did not have any. Coker then approached Mr. Hubbard and punched him twice in the face. Mr. Hubbard sat dazed on the couch and watched Coker leave the apartment with the game system. When he came to his senses, Mr. Hubbard put on his shoes and ran out of the apartment in an attempt to catch Coker. By the time Mr. Hubbard made it outside, Coker was nowhere in sight. Mr. Hubbard called a nearby friend to help find Coker. He then jogged through the neighborhood, searching unsuccessfully for him.

{¶11} The defense presented evidence that Coker was permitted to enter the residence and a dispute ensued. Then, after the dispute ended and while Coker was alone in the apartment, he took the game system. According to the defense, Coker had car trouble on the morning of November 4, 2012, in the vicinity of Ms. Bailey's apartment. He needed to charge his cell phone, and he chose Ms. Bailey's apartment because it was familiar to him. Coker had been there previously as a guest at a social gathering during the preceding summer. Ms. Bailey and Mr. Hubbard were both present at that gathering, which included drug use, alcohol consumption, and card playing. Because he had smoked marijuana at the apartment before with Mr. Hubbard and in Ms. Bailey's presence, he felt comfortable going there to charge his phone and roll a blunt.

{¶12} Coker knocked on the door and Ms. Bailey answered. Coker asked Ms. Bailey if he could come in, roll a blunt, and charge his phone. After identifying himself and pulling back the hood of his sweatshirt so Ms. Bailey could see his face, Ms. Bailey opened the door and allowed him in. Coker entered the apartment, plugged in his phone, and sat down at the table to roll a blunt.

{¶13} Coker intended to smoke a blunt with powder cocaine sprinkled on top. As Coker prepared to roll the blunt, he took the cocaine out of his pocket. Ms. Bailey bumped Coker and knocked the powder cocaine onto the carpet. Coker then told Ms. Bailey that he wanted her to pay for the spilled cocaine. He stood up and grabbed her shoulders. Ms. Bailey screamed and Coker flung her against the wall. She then ran to her bedroom. At this point, Coker was startled by the sight of Mr. Hubbard coming at him with his hands up in a fighting position. Coker punched Mr. Hubbard and Mr. Hubbard fell back. He got up, came back at Coker, and the men tussled for approximately a minute. After the tussle, Mr. Hubbard ran outside.

{¶14} At this point, Coker was alone in the living room of the apartment. Mr. Hubbard had fled the apartment, and Ms. Bailey was in her bedroom. Coker then noticed the game system. Believing that he should be compensated for the spilled cocaine, Coker decided to take the game system. He unplugged the game system, unplugged his phone, and left the apartment with the game system.

{¶15} Under the facts here, a reasonable jury could conclude that the evidence presented supports a conviction of theft. R.C. 2913.02 defines theft and states, in pertinent part, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1). A reasonable jury could conclude that

Coker purposefully deprived Ms. Bailey of the game system to compensate himself for the spilled cocaine and that he exerted his control over the game system by taking it from the home. A reasonable jury could further conclude that Coker did not have Ms. Bailey's consent because he did not ask for consent and it was not given by anyone authorized to give consent. Thus, a reasonable jury could conclude that all the elements of theft were met.

{¶16} Based on the evidence, a reasonable jury could also conclude that the additional element required for the offense of robbery was not met. R.C. 2911.02 defines the offense of robbery and states, in pertinent part, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.02(A)(2). A reasonable jury could conclude that Coker did not decide to take the game system until he was alone in the living room after the altercations with Ms. Bailey and Mr. Hubbard. If no one else was present in the living room, there could be no infliction, attempted infliction, or threat of physical harm on another in furtherance of the theft. Therefore, this element of robbery would fail, allowing a reasonable jury to acquit on the charge of robbery.

{¶17} The State argues that the trial court did not err in failing to give an instruction on the lesser included offense of theft on the basis of *State v. Goodson*, 9th Dist. Medina No. 2537-M, 1996 WL 502319, *2 (Sept. 4, 1996). This Court held in *Goodson* that it is not necessary to have intent to steal at the beginning of the forceful altercation. In *Goodson*, we stated that to prove robbery it is necessary for the state to demonstrate that the use or threatened use of force coincided in time with the intent to commit the theft. *Id.* This Court further clarified that robbery does not require intent to steal at the outset of a forceful altercation. *Id.* However,

robbery does require the use of force during or while fleeing immediately after the commission or attempt to commit a theft. *Id.* We do not find *Goodson* controlling in this case.

{¶18} In *Goodson*, the altercation lasted only a matter of seconds. The defendant threw the victim to the ground and removed the items from the victim's person as the two struggled on the ground. After a matter of seconds, the defendant got up and walked away. Goodson's only opportunity to commit the theft was during the course of the struggle. The court held that there was no evidence from which a reasonable inference could be drawn that the theft was committed without the use of force. *Id.* at *2.

{¶19} This case is distinguishable from *Goodson*. Whereas the theft in *Goodson* occurred during the altercation, evidence was presented that Coker did not notice or take the game system until after the altercations with Ms. Bailey and Mr. Hubbard were complete. A reasonable inference could be drawn that the intent to steal did not exist at the time of the altercation. A reasonable jury could further infer that the theft was committed without the use of force because the theft did not occur until after the completion of all physical contact between Coker and the victims. Thus, the jury could reasonably have found that it was a theft that occurred independently and subsequent to the altercation underlying the assault charges.

{¶20} Because there is evidence from which a reasonable inference can be drawn that this theft was committed without the use of force, a jury instruction on the lesser included offense of theft was warranted. Thus, it was error for the trial court to refuse to instruct the jury on the lesser included offense of theft. The first assignment of error is sustained.

**ASSIGNMENT OF ERROR II**

APPELLANT COKER'S CONVICTIONS FOR ROBBERY AND A REPEAT VIOLENT OFFENDER SPECIFICATION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶21}** Based on our resolution of the first assignment of error, the second assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

**{¶22}** Coker's first assignment of error is sustained. We decline to address his second assignment of error as it has been rendered moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

                                    _____

DONNA J. CARR
FOR THE COURT


WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

DAVID G. LOMBARDI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.