[Cite as *State v. Moore*, 2014-Ohio-4471.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100786**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SHARON R. MOORE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573045-B

**BEFORE:** Kilbane, J., Rocco, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue - Suite 200
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Brent C. Kirvel
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Sharon Moore ("Moore"), appeals her convictions. For the reasons set forth below, we affirm.

{¶2} In April 2013, Moore and codefendant, Rachella Womack ("Womack"), were charged in an eight-count indictment resulting from the death of Nadia Williams ("Nadia"). Count 1 charged both of them with the involuntary manslaughter of Nadia, while committing a felony. Count 2 charged both of them with the abduction of Gary Williams ("Williams"), who was of no relation to Nadia. Count 3 charged both of them with the assault of Williams. Counts 4 and 5 charged both of them with disorderly conduct. Count 6 charged each of them with inducing panic. Count 7 charged both of them with inciting to violence. Count 8 charged both of them with aggravated trespass.

{¶3} The matter proceeded to a jury trial, at which the following evidence was adduced.[1]

{¶4} The incident was captured by surveillance video, which the jury was able to view. The video shows a group of four females, later identified as Moore, Womack, Notasha Williams, and the victim Nadia, entering the IHOP restaurant in Cleveland Heights around 2:00 a.m., on March 30, 2013. Raymond Acosta ("Acosta"), an employee at IHOP, testified that there was a disturbance in the ladies room shortly thereafter. Williams, a deputy bailiff at Cleveland Municipal Court, was working as a

---

[1] Prior to the start of trial, Womack retracted her plea of not guilty and entered a guilty plea to involuntary manslaughter R.C. 2903.04(B), a felony in the third-degree.

contract security guard for IHOP at the time. Williams testified that he asked the group to leave because they continued to be loud after returning to their table from the ladies room. The females started to argue with Williams as they were walking out. Moore stated that she was going to go home and get her gun and come back and "kill all you mother f*****s". The fighting drew the attention of the other patrons in the restaurant.

{¶5} When they were in the vestibule, Moore turned back around and shouted more profanities at Williams. Williams put his hands on Moore to escort her out. Moore then grabbed him and the other three females started to attack him. Williams tried to get the females outside of the restaurant. The surveillance video shows the four females attacking Williams outside the restaurant. He tried to reenter the restaurant, but the females pulled him back outside.

{¶6} Williams testified that Nadia kept brushing up against his gun. He unholstered his gun to prevent her from taking it and told them to "back the f*** up." The video then depicts and Williams testified that Moore

> just kept hanging on to me, kept hanging on to me, hitting me. [Nadia] began to grab my hand, began to try to take my weapon from my hand. As she began to take the weapon from my hand, I just tried to grip the gun as hard as I could in my hand because I had [Moore] hanging on to me. So she just kept hitting my hand, kept popping my hand, kept trying to knock the gun out of my hand.

Williams continued to hold on to his weapon in his right hand, trying to secure it. Moore would not let him go, so he used a specific hold to bring her down to the ground.

{¶7} At this point, Williams testified and the video depicts that he was on the ground trying to restrain Moore when Nadia jumped on top of his back, trying to take

control of his gun. Then, the other two females appear to push Williams off of Moore, which causes Nadia to fall backwards off of Williams. Williams fell onto his back, with both of his arms going backwards. A shot then went off from Williams's gun, striking Nadia and tragically killing her. The three other females started running after the gunshot. Moore came back into the IHOP and started knocking over items and throwing items throughout the restaurant.

{¶8} Randall Walker ("Walker"), an employee of IHOP, testified he went outside to intervene because he felt that Williams was in danger. When Walker went outside to help Williams, he observed four females on top of Williams. Walker heard one of the females say something regarding Williams's gun. From Walker's observations, Williams was not using any outward force, but rather, trying to protect himself.

{¶9} Anthony Burton ("Burton") happened to be driving by the IHOP as Williams and the four females were fighting outside. He observed Williams holding one of the females and the other three females hitting Williams. He heard one of them say "get his gun, get his gun" after Williams had unholstered his weapon.

{¶10} Womack testified for the state. She testified that Williams asked them to leave their table, and as he was escorting them out of the restaurant, he gave her a shove and she blew it out of proportion. When Williams put his hands on her, she stated to him that he "f****d up now" and she got in his face. At this point, Moore became involved and began grabbing Williams. When Williams got them out of the restaurant, Womack testified that they tried to charge at him. She thought that Williams pulled his gun out to

back them away.   Despite this, the females continued to attack Williams and try to get the gun from him.   Womack testified that Moore was still fighting with Williams, even after he unholstered his gun.

{¶11} At the end of the state's case, Moore moved for acquittal under Crim.R. 29. The trial court granted the motion with respect to Count 7 (inciting to violence).   The trial court then read the charge to the jury.   Over objection by defense counsel, the trial court instructed the jury on involuntary manslaughter, in violation of R.C. 2903.04(A), and the lesser included offense of involuntary manslaughter, in violation of R.C. 2903.04(B).   The difference between the two offenses is that the more serious charge requires the commission of a felony in connection with the victim's death, whereas the less serious charge requires the commission of a misdemeanor.   The court stated in pertinent part:

> If you find that the State proved beyond a reasonable doubt each and every one of the essential elements of the offense of involuntary manslaughter as charged in Count 1 of the indictment, your verdict must be guilty according to your findings.   * * *
>
> If you find the State failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of involuntary manslaughter as charged in Count 1 of the indictment, your verdict must be not guilty according to your findings.   * * *
>
> If the evidence warrants it, you may find the defendant guilty of an offense lesser than that charged in the indictment.   However, notwithstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts and the law warrant a conviction of the offense charged in the indictment, namely, involuntary manslaughter, Revised Code Section 2903.04(A), then it is your duty to make such finding uninfluenced by your power to find a lesser offense.

This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser offense.

Lesser included offense, involuntary manslaughter, 2903.04(B). If you find the State failed to prove beyond a reasonable doubt all the essential elements of involuntary manslaughter, Revised Code Section 2903.04(A), then your verdict must be not guilty of that offense. In that event, or if you are unable to unanimously agree, you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the lesser included offense of involuntary manslaughter, Revised Code Section 2903.04(B). The offense of Involuntary Manslaughter Subsection (A) is distinguished from Involuntary Manslaughter Subsection (B) by the absence or failure to prove such death was the proximate result of [Moore] committing or attempting to commit the felony offense of inducing panic and/or abduction.

Before you can find the defendant guilty of involuntary manslaughter, Ohio Revised Code Section 2903.04(B), you must find, beyond a reasonable doubt, that on or about the 30th day of March, 2013, in Cuyahoga County, Ohio, the defendant, [Moore], did cause the death of [Nadia] and such death was the proximate result of [Moore] committing or attempting to commit assault and/or disorderly conduct and/or aggravated trespass.

{¶12} The jury returned a verdict on October 15, 2013, finding Moore guilty of involuntary manslaughter, while in the commission of a misdemeanor, in violation of R.C. 2903.04(B), the lesser included offense under Count 1 of the indictment, assault (Count 3), disorderly conduct (Count 4), disorderly conduct (Count 5), and aggravated trespass (Count 8). The jury returned a verdict of not guilty of abduction (Count 2) and of inducing panic (Count 6).

{¶13} The trial court sentenced Moore to nine months in prison on Count 1 and six months in prison on Count 3. The court sentenced Moore to time served on Counts 4, 5,

and 8.  The court ordered that the counts be served concurrently, for total sentence of 9 months in prison.

{¶14} Moore now appeals, raising the following three assignments of error for review.

Assignment of Error One

The trial court committed error in its jury charge when, over objection by the defense, it gave the jury the option of finding [Moore] guilty of involuntary manslaughter in the commission of a misdemeanor.

Assignment of Error Two

The evidence was insufficient to support the guilty verdict on involuntary manslaughter.

Assignment of Error Three

The guilty verdict on involuntary manslaughter was not supported by the manifest weight of the evidence.

Jury Instructions

{¶15} In the first assignment of error, Moore argues the trial court erred when it instructed the jury on the lesser included offense of involuntary manslaughter in the commission of a misdemeanor, in violation of R.C. 2903.04(B).

{¶16} In Count 1 of the indictment, Moore was charged with involuntary manslaughter in the commission of a felony (Count 2 — abduction and/or Count 6 — inducing panic) in violation of R.C. 2903.04(A).  This section provides that:  "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."  The jury found Moore not guilty of this

offense, and instead found her guilty of involuntary manslaughter in the commission of a misdemeanor (Count 3 — assault and/or Count 8 — aggravated trespass) in violation of R.C. 2903.04(B). This section states that: "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor[.]" Moore maintains that the court should not have instructed the jury on this offense because they are two different offenses with two different felony levels.

{¶17} We note that a criminal defendant may be found guilty of a lesser included offense even though the lesser offense was not separately charged in the indictment. *State v. Lytle*, 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990). Lesser included offenses need not be separately charged in an indictment, because "when an indictment charges a greater offense, it necessarily and simultaneously charges the defendant with lesser included offenses as well." *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, 905 N.E.2d 151, ¶ 15, quoting *Lytle* at 157. *See also State v. Wine*, Slip Opinion No. 2014-Ohio-3948, ¶ 18; *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 8.

{¶18} The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *Evans* at ¶ 13. "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier

looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. "Only in the second tier of the analysis do the facts of a particular case become relevant." *Deanda* at ¶ 6.

{¶19} In determining whether an offense is a lesser included offense of another, a court shall consider whether (1) "one offense carries a greater penalty than the other," (2) "some element of the greater offense is not required to prove commission of the lesser offense," and (3) "the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *Evans* at paragraph two of the syllabus, clarifying *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

{¶20} After it has been determined that the offense is a lesser included offense, the second tier mandates that courts look to the evidence in a particular case and determine whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Deanda* at ¶ 6, quoting *Evans* at ¶ 13. *See also State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988); *Wine* at ¶ 21, citing *Thomas*. Indeed, in the most recent jury instruction case on lesser included offenses from the Ohio Supreme Court, *Wine*, the court reiterated that: "[t]he trial court must give an instruction on a lesser included offense if under any

reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Id.* at ¶ 34.

**{¶21}** In reviewing the first tier of the analysis, we find that all three parts of the *Evans* test are met. In analyzing the two offenses under the *Deem* test, the court in *State v. Shirk*, 10th Dist. Franklin No. 97APA03-390, 1997 Ohio App. LEXIS 5060 (Nov. 4, 1997), stated that:

> Based on [the *Deem* test], it is axiomatic that involuntary manslaughter, under R.C. 2903.04(B), carries a lesser penalty than involuntary manslaughter under R.C. 2903.04(A); involuntary manslaughter, under R.C. 2903.04(A), cannot ever be committed without the offense of involuntary manslaughter under R.C. 2903.04(B) also being committed; and an element of involuntary manslaughter, under R.C. 2903.04(A), is not required to prove the commission of involuntary manslaughter under R.C. 2903.04(B). Thus, involuntary manslaughter under R.C. 2903.04(B) is a lesser included offense of involuntary manslaughter under R.C. 2903.04(A)[.]

*Id.* at *13-*14. *See State v. Talley*, 8th Dist. Cuyahoga No. 83237, 2004-Ohio-2846, ¶ 63 (where this court found that involuntary manslaughter under R.C. 2903.04(B) is a lesser included offense of involuntary manslaughter under R.C. 2903.04(A)). *See also State v. Turner*, 2d Dist. Montgomery No. 18026, 2000 Ohio App. LEXIS 3487 (Aug. 4, 2000).

**{¶22}** With respect to the second tier, we look to the evidence in this case and determine whether the "'jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" *Evans* at ¶ 13. Here, it is reasonable for the jury to find that Moore proximately caused Nadia's death while committing a misdemeanor because the jury found her guilty of assault and

aggravated trespass (both misdemeanors) and not guilty of abduction and inducing panic (both felonies).    Therefore, a jury instruction on involuntary manslaughter in violation of R.C. 2903.04(B) was proper.

{¶23} Accordingly, the first assignment of error is overruled.

<u>Sufficiency of the Evidence</u>

{¶24} In the second assignment of error, Moore argues there is insufficient evidence to sustain her conviction for involuntary manslaughter because the State failed to demonstrate that she proximately caused Nadia's death.

{¶25} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶26}** Moore was convicted of involuntary manslaughter in violation of R.C. 2903.04(B), which provides that: "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor[.]" With regard to "cause" and "proximate cause/natural consequences" the court instructed the jury that

> [c]ause is an essential element of the offense. Cause is an act or failure to act which in a natural, continuous and reasonably inevitable sequence directly produces the death, and without which it would not have occurred.

> Proximate cause/natural consequences. [Moore's] responsibility is not limited to the immediate or most obvious result of the [Moore's] act or failure to act. [Moore] is also responsible for the natural and foreseeable consequences or results that follow, in the ordinary course of events, from the act or failure to act.

Moore argues that no rational trier of fact could have found beyond a reasonable doubt that Nadia's death was a reasonably inevitable consequence of any criminal act she performed or those with whom she may have been in concert with.

**{¶27}** A review of the testimony and the surveillance video depicts an altercation between the four females and Williams. The altercation escalated as Williams escorted them out of the restaurant. Williams told the females to "back up," but they continued to attack him. The females also attempted to get his gun when Nadia was fatally injured. There was no evidence to refute the sequence of events that led to Nadia's death. Nadia's death was a foreseeable consequence from the altercation with an armed security guard that started inside the restaurant and then spilled outside. Therefore, after viewing

this evidence in a light most favorable to the state, we find that there is sufficient evidence to sustain the involuntary manslaughter conviction.

{¶28} Accordingly, the second assignment of error is overruled.

## Manifest Weight of the Evidence

{¶29} In the third assignment of error, Moore argues her involuntary manslaughter conviction is against the manifest weight of the evidence. Moore argues that Nadia's death may have been foreseeable, but the jury lost its way in find that Nadia's death was reasonably inevitable.

{¶30} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 390, 1997-Ohio-52, 678 N.E.2d 541. The Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶31} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *Martin*, 20 Ohio App.3d

172, 485 N.E.2d 717.   Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶32}  In the instant case, the jury had the opportunity to watch the surveillance video and listen to the witness testimony.   The jury observed the females attacking Williams outside of the restaurant and Williams try to protect his weapon.   Nadia was on top of Williams's back when the other two females pushed Williams off of Moore.   This caused Nadia to fall backwards off of Williams.   Williams fell onto his back, with both of his arms going backwards, and a shot then went off from Williams's gun, striking Nadia and tragically killing her.   Based on this evidence, we cannot say the jury clearly "lost its way" and created such a manifest miscarriage of justice that Moore's involuntary manslaughter conviction must be reversed and a new trial ordered.

{¶33} Therefore, the third assignment of error is overruled.

{¶34} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KENNETH A. ROCCO, P.J., and
PATRICIA A. BLACKMON, J., CONCUR